*In re* PHILLIPS.

1. INCOMPETENT PERSONS—PROBATE COURT—INSANITY.
   Proceedings to adjudicate an individual insane should show a strict compliance with all the statutory requirements.

2. SAME—JURISDICTION.
   An order adjudging the respondent to be insane and committing her to an asylum, is void for want of jurisdiction, upon a record which shows that the petition was filed on May 21, 1902, an order for hearing made on May 22d, fixing the time of hearing on May 23d at 4 p. m., and that the hearing was held on May 22d at 4 p. m.

3. SAME—EVIDENCE—ADMISSIONS—ESTOPPEL—RES ADJUDICATA.
   It was error to admit in evidence, for the purpose of showing an estoppel, subsequent proceedings in probate court upon a petition to declare respondent restored to mental soundness wherein, at respondent's request, an order of discontinuance was entered, with costs against her.

4. SAME—MENTAL INCAPACITY—EVIDENCE.

An admission of insanity can never fix the status of incompetency.

5. SAME—STATUTES—RESTORATION TO MENTAL SOUNDNESS.

Proceedings under 1 Comp. Laws, § 1942, for an order declaring the petitioner restored to sanity, are not required but are permissive.

6. SAME—EVIDENCE—PRESUMPTIONS.

Persons are presumed to be sane until the contrary is shown by a preponderance of the evidence.

7. SAME.

Jurisdictional defects in an order determining insanity may be attacked collaterally, where no rights of innocent third persons are involved.

8. SAME.

Such proceedings are not adversary, but in the interest of the public, to protect deficient citizens.

9. SAME.

Where the only evidence of incompetency was the cross-examination of the respondent, who showed a fair degree of intelligence in business affairs, and of acquaintance with her property, and gave no evidence of mental incapacity under a lengthy cross-examination, an order appointing a guardian is not sustained by the proof.

Error to Houghton; Streeter, J. Submitted April 15, 1909. (Docket No. 51.) Decided September 21, 1909.

Petition by Arthur Phillips for the appointment of a guardian of the person and estate of Gertrude C. Phillips, an alleged insane person. The petition was granted in probate court, and respondent appealed to the circuit court. A judgment for petitioner is reviewed by respondent on writ of error. Reversed.

*Hanchette & Lawton,* for appellant.

*W. J. Galbraith,* for appellee.

McALVAY, J. An application was made to the probate court of Houghton county for the appointment of a guardian of the person and property of Gertrude C.

Phillips, upon the ground that she was mentally incompetent, by reason of insanity, to have charge, custody, and management of her person and property. The petitioner was a son and a prospective heir at law. It was alleged that the estate was of considerable amount. A hearing was had, the prayer of the petitioner granted, and the guardian of the person and estate appointed. A review of the action of the probate court was sought by writ of certiorari to this court, and it was held in this case not to be the proper remedy. 154 Mich. 139 (117 N. W. 630). An appeal was then had from this order and decree of the probate court, and the cause was heard in the circuit court for said county before the court and a jury. A verdict was rendered that the prayer of the petition be granted. The case is before us, upon writ of error, for review.

The principal question raised by the errors assigned is that the court should have instructed a verdict for respondent on the ground that there was no evidence in the case showing insanity.

It appears that on May 21, 1902, proceedings were begun by John Phillips, the husband of respondent, praying that she be admitted as a private patient to the Upper Peninsula Hospital for the Insane, as an insane person. On the same day an order was made appointing two reputable physicians to examine respondent as to her alleged insanity, and to certify to her condition as to sanity on or before May 22, 1902, at 4 o'clock p. m.; "that being the time and place heretofore assigned for hearing the application." On May 22, 1902, an order was made for hearing said application on May 23, 1902, at 4 o'clock p. m., and on the same date, May 22, 1902, a hearing was had, and the order was made declaring her insane, and committing her to the hospital as a private patient. She remained there about six months, and was discharged. Since that time she had been at her home without restraint, going about her own affairs and transacting business for herself.

The record shows that upon the trial of this case the only evidence offered by petitioner related to these proceedings had in probate court, from which this appeal is taken, and the proceeding to commit respondent to the Hospital for the Insane above described, and consisted of: (1) Exhibit A, which was the petition, order of hearing, the order appointing the guardian, and the opinion and finding of the probate court in the proceedings appealed from in the case at bar. (2) Exhibit B, which was proof of service of notice of appeal and notice of trial. These two exhibits composed the material parts of the files and records in the case, and were received in evidence. (3) Petitioner also offered in evidence Exhibit C, which was a certified copy of the order of the probate court made May 22, 1902, declaring Gertrude Phillips insane, and ordering her to be removed to the hospital as a private patient.

Counsel for respondent objected to the admission of this order because it was not accompanied by the record of the proceedings; that it was void because no proper service was had, and the hearing was premature, and respondent was not represented by a guardian *ad litem*. The objection was overruled, and an exception taken. The record of these proceedings was afterwards offered by respondent for the purpose indicated, and received in evidence. (4) Petitioner also offered in evidence Exhibit D, being a copy of a petition of Mrs. Phillips filed in probate court for an order declaring her to be restored to soundness of mind, dated December 27, 1907, and Exhibit E, being a copy of an order made by said court, dated March 10, 1908, withdrawing said petition on her motion, and adjudging costs against her, taxed by the court, at the sum of $72.50. Objection was made to the admission of both these exhibits because they were immaterial and irrelevant to the issue. The objections were overruled, and respondent excepted. No further evidence was offered by petitioner, and he rested his case. The question was again raised at the close of the case, by request to charge the jury to return a verdict for respondent.

Proceedings taken for an adjudication of insanity against
an individual should require the strictest compliance with
all the statutory requirements provided.   The determina-
tion affects the rights of the individual to the enjoyment
of life, liberty, and property.   Courts will ever protect
the rights of the individual who is so unfortunate as to be
called upon to make a showing to maintain his or her
mental integrity.   It is apparent that the original pro-
ceedings offered in evidence did not comply with the stat-
ute.   The record shows that the petition was filed May
21st; the order for hearing was made May 22d to be held
May 23d at 4 o'clock p. m.   This hearing was had 24
hours before the time fixed in the order, and the respond-
ent was declared insane and committed to an asylum.
Whether this was purposely done or not we cannot say,
but it is significant that this order determining insanity
was made on the date and at the hour the medical experts
were required to report, by an order which recited that
this was the time fixed for the hearing of the application.
This order is shown to be void because made without juris-
diction.   Respondent was declared insane, and committed
within 24 hours after the husband's petition was filed.
To hold this to be an orderly judicial proceeding would
be a travesty upon the administration of justice.   No rea-
son for such remarkable haste is even offered.  This re-
spondent was not a raving maniac.   Her husband in his
petition alleged "that [she] has delusions; thinks some-
body is trying to kill her, and worries about members of
the family; thinks that they have been injured and has
other delusions"—as the reasons for applying to the court
for an adjudication of insanity.   The court was in error
in not excluding from the case this order of adjudication
of insanity and commitment to the hospital for the insane.

The petition for restoration to soundness of mind made
by respondent in 1907, and the order discontinuing such
proceedings, were offered in the case at bar as part of
petitioner's showing of the insanity of respondent.   The
objection made was that they were immaterial and irrele-

vant. Petitioner insists that they were material and relevant to show that respondent is estopped from making objection to the proceedings and order declaring her insane. An admission of insanity can never fix the status of unsound mind in the person making the admission. The law prescribes the only way a determination of insanity may be declared.

It is doubtful whether in any case, where no rights of innocent third parties intervene, any conduct of any person will estop him from questioning in any proceeding the regularity and determination of his insanity. The statute providing for proceedings to secure an order of restoration of soundness of mind after one has been adjudicated insane is not mandatory. It is permissive merely. Section 1942, 1 Comp. Laws. The proceedings begun and discontinued under the restoration act were not material or relevant to the issue, and should not have been admitted. The doctrine of estoppel is not applicable.

All persons are presumed to be sane, and in every proceeding the burden of proving insanity rests upon the one challenging the sanity of the individual. It is always a question to be tried out in the proceeding then pending where it was raised. It is intimated that this was a collateral proceeding in which the regularity and validity of the adjudication of insanity could not be attacked. Whether this is, strictly speaking, a collateral proceeding, we do not determine. It is sufficient answer to the argument to say that jurisdictional defects which appear upon the face of the proceedings may be raised at any time between the parties, even in a collateral proceeding, when the rights of innocent third persons are not concerned. *Palmer* v. *Oakley*, 2 Doug. (Mich.) 433 (47 Am. Dec. 41), and cases cited and digested. *Gillett* v. *Needham*, 37 Mich. 143, and footnote; *Breen* v. *Pangborn*, 51 Mich. 29 (16 N. W. 188).

The proceeding leading to an adjudication of insanity is not an adversary proceeding. It is a proceeding in the interest of the public to protect deficient citizens. It is

therefore not a proceeding where any act or admission of respondent could prejudice an adverse party. The evidence objected to should not have been admitted.

Petitioner, then, is left to rely entirely upon the cross-examination of respondent for any proof of her alleged insanity. There was no proper evidence in the case to go to the jury at the time petitioner rested. At that time a motion to dismiss the proceedings, if made, should have been granted.

Unless we find some evidence tending to show respondent insane contained in her cross-examination, petitioner must fail in these proceedings. We have examined her testimony to discover such evidence. We find her a woman acquainted with business affairs, one who has intelligently dealt in stocks, and who understands how and when to buy, and gives the reasons therefor. She knows her property and her transactions relative to it. The vigorous cross-examination by counsel for petitioner continued for several hours, with the purpose of showing her insane condition. We think that in this there was a failure. It shows more knowledge of affairs, better understanding of questions asked, and less confusion in the answers, than like examination shows of the average witness in court. We do not discover in this record any evidence of respondent's mental incapacity, and we have all such parts of the record certified which are necessary to determine the questions raised. Petitioner produced no lay witness or medical experts, and without doubt the jury were influenced · by this improper proof, and felt as did the judge of probate in his statement in his finding offered by petitioner and received in evidence in Exhibit A. This is quoted to show the effect of the adjudication of insanity allowed in evidence upon the ordinary mind. He said:

"I find that Gertrude Phillips at the present time has sufficient sense and judgment to transact the ordinary business affairs of life, and I should not appoint a guard-

ian for her person and estate on the parol proof presented at this time; but the records of this court show that on May 22, 1902, she was adjudged insane, and this decree has not been set aside by an order of restoration as provided for by statute."

The court was in error in not charging the jury in favor of respondent as requested.

The judgment of the circuit court is reversed, and a new trial granted. The respondent and appellant will recover costs of both courts against the petitioner.

BLAIR, C. J., and GRANT, MONTGOMERY, and BROOKE, JJ., concurred.