## *In re* McKINNEY.

INSANE PERSONS—DISCHARGE—EVIDENCE—PHYSICIANS' CERTIFICATES
—EQUALLY DIVIDED COURT.

Petition for release of married woman, adjudged to be insane, because order adjudging her insane was based on insufficient testimony and insufficiency of physicians' certificates is dismissed by an equally divided court (CL 1948, § 330.11 *et seq.*).

Habeas corpus with accompanying certiorari to to Lenawee Probate Judge by father of Geraldine R. McKinney to obtain her release from Ypsilanti State Hospital. Submitted July 19, 1949. (Calendar No. 44,426.) Release denied by an equally divided court December 7, 1949.

*Lawrence J. Hammond,* for petitioner.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for respondents.

CARR, J. (*for discharge*). By order of the probate court of Lenawee county, entered January 14, 1949, Geraldine R. McKinney was adjudged an insane person and was committed to the Ypsilanti State Hospital. The present action has been instituted in her behalf by her father to obtain her release. The petition filed alleges that Mrs. McKinney's detention is illegal in that mandatory provisions of the statutes of the State relating to proceedings to deter-

REFERENCES FOR POINTS IN HEADNOTE
14 Am Jur, Courts, § 81.

mine alleged insanity were not observed.* Based on the averments of said petition a writ of habeas corpus was issued, directed to the medical superintendent of the hospital, with ancillary writ of certiorari to the probate court. Returns to the writs have been duly filed.

It appears from the record before us that the proceeding against Mrs. McKinney was instituted by her husband, his petition to the probate court averring her insanity and asking that she be committed to the Ypsilanti State Hospital as a public patient. Pursuant to the direction of the statute, an order was made appointing 2 physicians to examine Mrs. McKinney as to her alleged insanity. A further order was entered setting the matter for hearing on January 14, 1949, and requiring service of a copy of such order on Mrs. McKinney, her husband, her parents, and the prosecuting attorney of the county. Proof of service on the parties named, other than the husband, was filed; and the record indicates that Mr. McKinney appeared at the hearing on January 14th. There was no appearance by Mrs. McKinney, or on her behalf.

The sufficiency of the petition filed by Mr. Mc-Kinney is not questioned. On behalf of Mrs. Mc-Kinney it is claimed that the certificates filed by the physicians acting under the order of the probate court did not set forth sufficient facts to furnish a proper basis for the findings therein indicated, and that the testimony taken on the hearing did not establish that she was insane. Each certificate stated an opinion of insanity requiring treatment. One of said certificates alleges the facts and circumstances forming the basis for the opinion as follows:

* PA 1923, No 151, as amended (CL 1948, § 330.11 *et seq.* [Stat Ann and Stat Ann 1947 Cum Supp § 14.801 *et seq.*]).

"For the past 4 to 6 years she has exhibited hallucinations and delusions with increasing frequency. These are manifest by her stating that the family have no financial means to buy food or clothing and that people talk about her. Whenever new clothing or food is brought into the home she disposes or destroys them without using them, and then believes they are starving. She states she worries about this fact so much she cannot take care of her home or children. She cannot be made to believe these worries are groundless."

The other certificate contains the following recital:

"For the past 6 years she has shown an unbalanced mind. She had delusions in regard to her husband's fidelity. She has no regard for her personal appearance nor for her care of house. She has no control over her children nor seems to care."

The provisions of the statute relating to the appointment of examining physicians in insanity proceedings and to the certificates to be filed thereby are found in CL 1948, § 330.20 (Stat Ann 1947 Cum Supp § 14.810). Said section reads in part as follows:

"Such physicians are empowered to go where said person may be or make such personal examination of him as to enable them to form an opinion as to his mental condition, and no certificate shall be made except after such personal examination. Certificates of such physicians to authorize commitment must show that it is their opinion that the person is actually insane, or feeble-minded, or epileptic, as the case may be, and shall contain the facts and circumstances upon which the opinion of the physician is based, and show that the condition of the person examined is such as to require care and treatment in an institution for the care, custody and treatment of such mentally diseased persons."

The legislative intent clearly appears from the language quoted to require an examination of such character as to enable the physician to form an opinion *based thereon,* which opinion must be set forth in the certificate filed in the proceeding. Furthermore, the mere statement of the opinion is insufficient. The facts and circumstances on which it rests must be set forth. Construing the provisions of the statute together, as we must do, it is clear that the legislature in specifying the procedure to be followed had in mind the facts and circumstances disclosed to the physician by the examination. It may also be noted that the inquiry is directed to the condition of the alleged mentally diseased person at the time of the examination. It is that condition to which the physician certifies. He may not properly base his conclusions on information that he has received other than by the examination. If he is permitted to do so, the purpose of the statute in requiring that the opinion shall be based on a personal examination is defeated. To the end that the rights of the person whose mental condition is the subject matter of the inquiry may be protected, the provisions of the statute must be strictly followed. *Freedman* v. *Freedman,* 303 Mich 647. The conclusion follows that the examining physician may not rely on hearsay but must form his opinion in the manner required by the language of the statute under which he acts.

It is contended on behalf of Mrs. McKinney that the statements made in the certificates are, in part at least, mere conclusions, and that each physician relied on hearsay information as to her acts and mental condition prior to her examination. The criticism is well founded, particularly so with reference to the alleged facts and circumstances set forth in the certificate last quoted which, in our opinion, is insufficient to comply with the statute. The

statements that Mrs. McKinney had shown an un-balanced mind for a prior period of 6 years and that she had delusions with reference to her husband's fidelity do not appear to be based on the examination. Presumably they rested on the basis of alleged information given the physician by undisclosed persons. The examination could scarcely have disclosed her conduct during such period of time, nor that her belief as to her husband's conduct was wholly without foundation. These were matters incapable of determination other than by investigation and proof. The other statements in the certificate are not of such character as to reasonably import insanity.

On the hearing before the probate judge one witness only was examined. He indicated by his testimony that he was past 20 years of age, that he had known Mrs. McKinney for about 3 years, and that he had seen her frequently during the preceding 6 months. After preliminary questions, he testified as follows:

"*Q.* Tell us in your own words the way she acts and what she says.

"*A.* She seems to be awful nervous and when you would go to talk with her, her mind seems to wander; she asks one question and after a while she'd ask the same question over; she talks on the same subject quite a bit.

"*Q.* What does she talk about?

"*A.* Different things about where she lives; she doesn't like the place where she lives or where she lived before; she repeats the same thing over and over.

"*Q.* She's sort of incoherent in her talk?

"*A.* Yes.

"*Q.* Would you say from your observation of her and her contact with your family, that she was mentally off?

"*A.* She seems to be all right; and doesn't seem to be particular or anything; just nervous and upset

like that. I don't know just how you would put it. She throws the dishwater out with silverware in it and makes no effort to pick it up.

"*Q*. Tell us something else.

"*A*. They got a 55-gallon drum where they burn papers and she would put good clothes in there to burn up. There was a pair of Ralph's pants in there; there was nothing wrong with the clothes at all. Her husband picked them out of the drum.

"*Q*. You say she didn't seem to have mind enough to protect the clothing?

"*A*. No. She thinks if she throws them away she will get something new.

"*Q*. They are people of moderate means?

"*A*. Yes.

"*Q*. Did you ever hear her say of not having anything in the house?

"*A*. Yes, she's all the time complaining about that.

"*Q*. Her house is well provided for on the average is it not?

"*A*. Yes. If she would take care of what she gets. They have a kerosene stove in the kitchen; instead of putting matches in the container she throws them on the bottom part of the stove along with the grease and everything and doesn't clean it up.

"*Q*. She would do things that a normal person would not do?

"*A*. Yes.

"*Q*. That's all."

The adjudication of insanity cannot be sustained unless the testimony quoted may be construed as supporting it. Such an adjudication may not be based wholly on certificates of physicians appointed by the court under the statute, even though the facts therein recited indicate insanity. *In re Clifford*, 303 Mich 84; *In re Buck*, 308 Mich 634; *In re Haines*, 315 Mich 657. This Court does not weigh the evidence, but must necessarily determine whether there was competent proof on which to base the order that

was entered by the probate court. The statute (CL 1948, § 330.21 [Stat Ann 1947 Cum Supp § 14.811]) requires that:

"The court shall also institute an inquest, and take proofs, as to the alleged insanity, feeble-mindedness, or epilepsy of such person, and fully investigate the facts before making such order."

The preceding section of the statute, as above stated, requires that the certificates of physicians must contain "the facts and circumstances upon which the opinion of the physician is based." In *Re Phillips*, 158 Mich 155, 159, it was said:

"Proceedings taken for an adjudication of insanity against an individual should require the strictest compliance with all the statutory requirements provided. The determination affects the rights of the individual to the enjoyment of life, liberty, and property. Courts will ever protect the rights of the individual who is so unfortunate as to be called upon to make a showing to maintain his or her mental integrity."

The probate court has no power to act in a case of this character except in strict accordance with pertinent statutory provisions. Unless the procedure followed embodies the requirements imposed by the legislature, an order adjudging an individual to be insane and ordering his commitment is void. *In re Petition of Martin*, 248 Mich 512; *In re Davis*, 277 Mich 88; *In re Roberts*, 310 Mich 560; *In re Sawyer*, 311 Mich 602.

The testimony of the witness on the hearing, above quoted, indicates that he considered Mrs. McKinney to be an exceedingly nervous individual, indulging at times in somewhat erratic conduct, but it is significant that he expressed no opinion to the effect that she was insane. Rather, she was "just nervous and upset." The specific conduct to which he testi-

fied was not of such character as to be inconsistent with sanity. It appears that on one occasion she put a pair of her husband's trousers in an incinerator. Evidently the husband was present at the time, for the witness stated that he rescued the garment. The circumstances under which this incident occurred were not stated by the witness, nor was he asked with reference to the details. The record fails to show whether Mrs. McKinney's act was accidental or intentional; and obviously her husband's removal of the garment from the incinerator rendered it unnecessary for her to take any action in that regard. The statements as to Mrs. McKinney's complaints and as to her throwing burned matches on the bottom part of the stove do not require comment.

This Court does not, of course, pass on the sanity of Mrs. McKinney. The question before us is whether the proceedings in the probate court complied with the requirements of the statute and supported the order adjudging her to be an insane person. To such question a negative answer must be given. The certificates of the physicians, particularly the one last above quoted, failed to set forth sufficient facts to justify an opinion of insanity; and the testimony taken on the hearing was wholly inadequate as a basis for the order made. *In re Haines, supra; In re Aslanian,* 318 Mich 55.

An order will enter discharging Mrs. McKinney from custody, but without prejudice to further proceedings if such are deemed necessary.

SHARPE, C. J., and BUSHNELL and DETHMERS, JJ., concurred with CARR, J.

BOYLES, J. (*for dismissal of writ*). I think that the patient was lawfully committed and that the writ should be dismissed.

The proceeding for her admission to the State hospital was instituted by a petition sworn to before the judge of probate alleging:

"That said Geraldine R. McKinney is an insane person and in need of treatment in an institution for the treatment and care of insane persons, and that the facts upon which said allegation is based, are as follows: Patient is very despondent; she takes no interest in anything; she leaves the housework for her two small daughters, age 10 and 12, to do; she persister (persisted) in putting fuel in a stove in a way an ordinary person would know was wrong, and it caught fire and she made no effort to put it out; she lays lighted electric lamps on the bed and watched it burning the bedclothes and made no effort to put it out; she is irresponsible and petitioner is afraid to leave her alone with the children."

· Both of the physicians' certificates filed in the proceeding, as required by statute,* were also sworn to before the judge of probate and each certified:

"That in my opinion said Geraldine R. McKinney is an insane person and her condition is such as to require care and treatment in an institution for the care, custody and treatment of such mentally diseased persons, and that the facts and circumstances upon which such opinion is based, are as follows: (then continues the statements of facts as quoted by Mr. Justice CARR)."

The statute requires the court to appoint 2 reputable physicians to conduct a personal examination of the patient, and certify their opinion, under oath, as to the patient's mental status. It requires that their certificates

"Shall contain the facts and circumstances upon which the opinion of the physician is based, and show that the condition of the person examined is

---

* CL 1948, § 330.20 (Stat Ann 1947 Cum Supp § 14.810).

such as to require care and treatment in an institution for the care, custody and treatment of such mentally diseased persons."

It does not require that the physicians have personal knowledge of the facts and circumstances stated in their certificates, upon which their opinions are based, or swear to the truth of such facts. Obviously, in many cases the physicians appointed by the court to examine the patient and certify to their opinion as to mental condition of the patient and the need for hospitalization could not be expected to have personal knowledge of the past acts and conduct of the patient. Furthermore, in the instant case there is nothing in either of said sworn certificates to establish that the statements on which opinion was based were on hearsay alone. In each certificate the physician states that under the direction of the court he personally examined the patient. One of the physicians certified that he had practiced as a physician for 18 years, the other certified he had practiced for 46 years. So far as shown by the statements of facts, each physician may have made his statement of the facts on which his opinion was based, or any part of it, from personal knowledge, or from admissions made by the patient at the time of the personal examination. I am not in accord with the conclusion that the physicians' certificates are insufficient on the ground that they may be based on hearsay.

Nor am I in accord with the construction given the statute by Mr. Justice CARR, *i.e.,* that it requires that the opinions of the physicians as to the mental condition of the patient must be based solely on their personal examination of the patient, as disclosed to the physicians *by the examination.* The statute places no such limitation on the basis upon which the physicians may form their opinions. Such a limitation

would in most cases eliminate entirely any consideration the physicians might give to the previous actions and conduct of the patient—which information the physicians, at least in many cases, could obtain only from others. The history of the patient obviously forms an important complement to the physical examination in the conclusions reached by the physicians. The statute does not require that the patient's history as obtained by the physicians from other sources be ignored or omitted by the physicians in their statement of the facts and circumstance upon which their opinions are based.

The statute requires the court to make an investigation and take proofs. *In re Aslanian*, 318 Mich 55. This was done by the probate court in the instant case. However (except on an appeal), this Court does not pass upon the weight of the testimony.

"Among other questions presented is petitioner's contention that at the hearing in the probate court no competent testimony was produced tending to prove petitioner's alleged insanity, and therefore his commitment by the probate court was absolutely void and his present detention is illegal.

"On review by certiorari of the proceedings in the probate court we do not pass upon the weight of testimony. Instead the limit of such review is to determine whether any competent testimony was produced from which it could reasonably be found that petitioner was an insane person. * * *

"It is not within the province of this Court in this proceeding to determine whether petitioner was insane at the time of his commitment or whether he is now insane." *In re Haines*, 315 Mich 657.

Among other things testified to before the court by the witness who was sworn at the hearing, he said "her mind seems to wander * * * she repeats the same thing over and over * * * she's sort of

incoherent in her talk  *  *  *  she would do things that a normal person would not do," and specific instances of abnormal conduct indicating an unbalanced mentality were testified to by the witness.

The judge of probate saw and heard these 4 persons—the petitioner, the physicians and the witness —all of whom were sworn in probate court in the course of the proceedings. As stated by Mr. Justice CARR, we do not here review as a question of fact whether the patient is insane. Such review would have to be sought by appeal from the order entered in probate court, not by habeas corpus. I hold that the physicians' certificates and the testimony are sufficient.

Under the circumstances of this case the writ is dismissed, without costs.

REID, NORTH, and BUTZEL, JJ., concurred with BOYLES, J.