*In re* OPAL.

1. INSANE PERSONS—PETITION FOR COMMITMENT—SUFFICIENCY.

Petition for commitment of plaintiff alleging that he was "very listless, stares into space, memory seems to be failing him" *held*, insufficient to confer jurisdiction upon probate court for commitment proceedings, since the first and last statements are conclusions and the statement "stares into space" does not constitute an allegation of mental illness (CLS 1956, §§ 330.20, 330.21).

2. SAME—COMMITMENT—PHYSICIAN'S AFFIDAVITS.

Physician's affidavit in commitment proceeding *held*, insufficient upon which to base order of commitment, where recital was limited to "This patient seems to have retained a mental age of about 8 years; noticed during the past several months that he was getting into circumstances dangerous for himself and others" (CLS 1956, §§ 330.20, 330.21).

3. SAME—VOID COMMITMENT—SECOND PROCEEDINGS.

Second commitment proceedings with respect to habeas corpus petitioner which record shows to have been in accord with statute and to have given the probate judge jurisdiction to enter order of commitment would not be invalidated by reason of the fact that they were commenced after first commitment was attacked by habeas corpus proceedings in Supreme Court and ultimately held void (CLS 1956, §§ 330.20, 330.21).

4. HABEAS CORPUS—COMMITMENT PROCEEDINGS—APPEAL.

Appeals from probate proceedings for the commitment of persons by reason of mental illness are not heard in the form of original writs of habeas corpus, hence, fact there existed a bitter dispute between sister-in-law of person committed and the probate judge who committed him, even though it might have been relevant on appeal as to the merits, was not relevant to questions raised on habeas corpus.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur, Insane Persons §§ 6, 7.
[3, 4] 29 Am Jur, Insane Persons § 41.

Two original writs of habeas corpus, with ancillary writs of certiorari directed to the probate court of Houghton county, by Clayton R. Opal to obtain release from Newberry State Hospital. Submitted February 9, 1960. (Calendar Nos. 48,210, 48,519.) Writs dismissed September 15, 1960.

*Michael J. Anuta* and *Messner & LaBine,* for plaintiff.

*Paul L. Adams,* Attorney General, Samuel J. *Torina,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant probate court.

EDWARDS, J. Two applications for original writs of habeas corpus and ancillary writs of certiorari to the probate court of Houghton county were filed in the Supreme Court of Michigan. These petitions seek to attack commitment proceedings whereby petitioner Clayton R. Opal was committed to the Newberry State Hospital by reason of mental illness.

The first such order of commitment was signed April 1, 1955, following a hearing before Judge Joseph M. Donnelly, judge of probate of Houghton county, on that date. The petition for writ of habeas corpus attacking this order was filed November 7, 1958, and the writ of habeas corpus and ancillary writ of certiorari was granted by this Court on April 13, 1959. Subsequent thereto the records forwarded to this Court disclose that another petition for commitment of Clayton R. Opal (in this instance filed by the sheriff of Houghton county) was filed June 9, 1959, and after a hearing on the petition on June 15 and 17, 1959, another order of commitment was entered by Probate Judge Joseph B. Kezele acting in Houghton county.

A review of the record of the probate proceedings certified to us in relation to the commitment order of April 1, 1955, shows them to be fatally defective.

The statute under which these proceedings were taken requires as to petition:

"The father, mother, husband, wife, brother, sister, child, if the petitioner be of legal age, or guardian of a person alleged to be mentally ill, mentally handicapped or epileptic, or the sheriff or supervisor of any township, or county agent * * * may petition the probate court of said county for an order directing the admission of said person to a hospital, home or institution for the care of the mentally ill, mentally handicapped or epileptic, such petition to contain a *statement giving the facts and not the conclusions upon which the allegation of such mental disease is based and because of which the application for the order is made.*" (Emphasis supplied.)   CLS 1956, § 330.21 (Stat Ann 1956 Rev § 14.811).

And as to medical affidavits:

"Certificates of such physicians to authorize admission must show that it is their opinion that the person is actually mentally ill, or feeble-minded, or epileptic, as the case may be, *and shall contain the facts and circumstances upon which the opinion of the physician is based,* and show that the condition of the person examined is such as to require care and treatment in an institution for the care, custody and treatment of such mentally diseased persons. A copy of the application for care, custody and treatment of the patient shall accompany the order of admission, to be used as a history of the case and for no other purpose." (Emphasis supplied.)   CLS 1956, § 330.20 (Stat Ann 1956 Rev § 14.810).

The total "facts and circumstances" alleged in the 1955 petition for commitment upon which said proceedings were based are, "very listless, stares into space, memory seems to be failing him."

The first and last allegations are conclusions rather than facts, and the allegation "stares into space" hardly seems to be a fact which, standing alone, could form a basis for an allegation of mental illness. We regard the recital of the petition as inadequate to confer jurisdiction upon the probate court for the 1955 proceedings. Further, at least one of the medical affidavits upon which the order of commitment was based failed to recite facts and circumstances upon which the opinion of mental deficiency certified to by the physician was based. In this instance, the complete recital was limited to "This patient seems to have retained [*sic*] a mental age of about 8 years; noticed during the past several months that he was getting into circumstances dangerous for himself and others." This language is considerably less factual and considerably more conclusionary than that dealt with by this Court in *In re Allison,* 336 Mich 316; *In re McKinney,* 326 Mich 190.

A review of the proceedings upon which the commitment order of June 17, 1959, was based, however, shows in that instance strict compliance with the statutory requirements in all respects. From the record presented here, we must conclude that the probate judge had jurisdiction of the person and the subject matter and authority to enter the commitment order which was entered.

It is clear from this record that the second commitment proceedings were initiated in 1959 because of the petition for writ of habeas corpus filed in the Supreme Court, attacking the first commitment, and because of concern lest the first commitment be held invalid. This fact, however, does not serve to invalidate the second proceedings when, in fact, the first commitment proved to be void.

The record also advises us of a bitter dispute between a sister-in-law of petitioner and the probate

judge who entered the 1955 commitment order. Whether or not such material might be shown to be relevant to an appeal as to the merits, it hardly seems relevant to the questions posed on these applications for writs of habeas corpus.

We do not, of course, hear appeals from probate proceedings in the form of original writs of habeas corpus.

We note incidentally that appeal from the 1959 order is pending in the circuit court of Houghton county.

Since petitioner is currently committed under an order of the probate court of Houghton county, dated June 17, 1959, which is valid on its face, and as to which the probate court records show the court to have had jurisdiction both to hold the hearing and enter the order, petitions for writs of habeas corpus are hereby dismissed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.