## Mulligan Estate

*Robert J. Lindsay, Jr.*, for petitioner.

*Harry D. Sporkin* and *Morris Paul Barin*, of *Sporkin & Barin*, for respondent.

Before Klein, Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

SHOYER, J., March 20, 1969.—This matter involves a proceeding under the Act of 1955, enacted February 28, 1956, P. L. (1955) 1154, as reenacted and amended by the Act of July 11, 1957, P. L. 794, 50 PS §§3101-3801, known as the Incompetents' Estates Act of 1955.

Before us is the motion of Harold B. Mulligan, the alleged incompetent, to dismiss the citation issued against him on petition of his daughter, Catherine M. Hagar, who has since died. Her death is the sole reason

assigned in support of the motion. Preliminary objections have been filed by the executor of the daughter's estate in which he asserts that there is no legal basis to sustain the relief requested by the alleged incompetent, that this court lacks jurisdiction, and that the hearing judge, Hon. Robert V. Bolger, heard sufficient testimony to establish a prima facie case of incompetency on the part of Harold B. Mulligan which, therefore, created a legal responsibility on the part of this court to complete the trial and give the alleged incompetent the protection the laws prescribe if, in fact, he is incompetent.

In her petition filed April 26, 1968, Catherine Mulligan Hagar averred that her father is a widower, 83 years of age, and a patient in Germantown Hospital to which he was admitted on April 18, 1968, for suspected cardiovascular difficulties. Because of the alleged mental infirmities of old age and physical illness, the petition averred that Harold B. Mulligan was unable to manage his property, estimated to be worth several million dollars, and that he was liable to dissipate the same or become the victim of designing persons. A corporate guardian was suggested.

Respondent's next of kin, since the death of Mrs. Hagar in September 1968, are two daughters, Mary Green and Sandra C. Stewart (adopted), and four grandchildren, being the children of Mrs. Hagar. When the incompetency proceeding was called for hearing on June 19, 1968, Mary Green joined in the petition of her sister, Catherine.

John L. Kelly, M.D., a diplomate of the American Board of Psychiatry and Neurology, in Psychiatry, was appointed impartial medical expert, and at two subsequent hearings before Judge Bolger he testified as to his physical and mental findings. Mr. Mulligan suffered from a left hemiplegia, generalized arteriosclerosis, diabetes mellitus and essential hypertension.

Because of advanced age, the prognosis was guarded to fair. This expert witness was of the definite opinion that Mr. Mulligan was competent to handle his own affairs and not liable to dissipate his property or become the victim of designing persons.

In addition to Dr. Kelly, testimony was heard from 12 other witnesses. Among them were respondent, his attending physician and Dr. Sall, a psychiatrist, who testified that in his opinion Mr. Mulligan was mentally incompetent.

Dr. Wilcox, the attending physician, testified as to the improvement in Mr. Mulligan's physical and mental condition since the occurrence of the stroke. He stated that the patient's physical condition should continue to improve "up to six months or even up to a year", and "[h]opefully the mental phase of it would show some increasing improvement likewise".

On this last note the learned hearing judge continued the proceedings as *lis pendens* for a period of three to six months. Counsel for both petitioner and respondent expressed their satisfaction with this arrangement.

It is a general rule of law that actions do not survive the death of a party in the absence of a statute providing for their survival: Johnson v. Peoples First National Bank and Trust Company, 394 Pa. 116, 123. Section 601 of the Fiduciaries Act of April 18, 1949, P. L. 512, reads as follows:

"All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants".

The question arises as to whether a proceeding to adjudicate a person so incompetent as to be unable to manage his property, thereby necessitating the appointment of a guardian, is such a "cause of action or

proceeding" as to come within the purview of the statute.

In Ryman's Case, 139 Pa. Superior Ct. 212, 216, 218, Keller, P. J., stated that an issue framed to determine incompetency under earlier, but similar, legislation "did not convert the proceeding into an ordinary cause of action at law. The point to be decided was the mental condition of George Ryman *at the time of trial,* with respect to his ability to take care of his property, and whether he is liable to dissipate or lose the same and become the victim of designing persons.

*       *       *

"(4) This was not an action at law between two litigants. It was a proceeding to determine whether the respondent was so mentally defective that he was incapable of taking care of his property, etc. One's mental capacity is best determined by his spoken words, his acts and conduct. They are always relevant evidence for that purpose. The court was of opinion that much of the evidence offered on the respondent's behalf should be excluded because he was thereby making testimony for himself. He had a right to make all the testimony he could for himself. If he had been called as a witness in this proceeding he could have made testimony for himself, and those who came in contact with him at or near or after the time of his commitment to the hospital should have been permitted to tell of his conversation with them and his acts and conduct which tended to show that he was capable of taking care of his property and was not liable to dissipate or lose the same or to become the victim of designing persons; just as the petitioner, or plaintiff in the issue, had been permitted to bring witnesses who testified as to his conversation, acts and conduct which led them to think he was incapable of taking care of his property".

In Myers Estate, 395 Pa. 459, 467, our Supreme Court endorsed the above quotation from the opinion of President Judge Keller with this preface: "By far the most significant evidence of record is Dr. Myers' own testimony". To the same effect is Denner v. Beyer, 352 Pa. 386, 395.

In Myers our Supreme Court reiterated what has been said judicially time after time that a statute to adjudicate incompetency and appoint a guardian for a man's estate is "a dangerous statute easily capable of abuse". And further, pp. 462-3: "Proof of mental incompetency must possess such strength and clarity as to lead incontestably to but one conclusion, to wit, that respondent is mentally incompetent. A finding of mental incompetency is not to be sustained simply if there is *any* evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency. If the finding of mental incompetency is not based on evidence of such quality then such finding amounts to an abuse of judicial discretion".

The very purpose of incompetency proceedings is "preventive and protective in nature": Sigel Estate, 169 Pa. Superior Ct. 425, 429. The decree of the court should be "preventative and protective in the best interests of the petitioner": Nagle Estate, 418 Pa. 170, 172; and when once entered, the court becomes "the real guardian of the incompetent": Harris Estate, 351 Pa. 368, 383; Strecker Estate, 20 D. & C. 2d 652.

The protective purpose of the Incompetents' Estates Act of 1955, P. L. 794, was emphasized by the legislature in designating the widest range of permissible petitioners. Section 301 provides, inter alia, that: ". . . The petitioner may be the alleged incompetent's spouse, a relative, a creditor, a debtor, or any person interested in the alleged incompetent's welfare". Only a deep and abiding concern for the welfare

of the alleged incompetent would warrant such a comprehensive list of authorized complainants. The very criterion of the statute — "interested in the alleged incompetent's welfare" — wholly negates any *personal interest or right* of petitioner. Construing this section our court has ruled that it is proper for a lawyer acting in good conscience and when necessity dictates to file a petition against his long standing client: Riley Estate, 11 D. & C. 2d 399. And our Supreme Court has ruled that there is no conflict of interest when a lawyer, who has represented a respondent for years as his attorney-in-fact, and as his attorney, files a petition against his client on behalf of a relative, or testifies against the client in an incompetency proceeding; but he should not act in both capacities in the same proceeding: Coulter Estate, 406 Pa. 402, 409.

While a proceeding under the Incompetents' Estates Act in its inception involves a personal attack upon the respondent's freedom to control his own property, it is axiomatic that there would be *no proceeding* in the absence of an *estate*. Once the court has made an adjudication of incompetency, respondent becomes the ward of the court and a guardian is appointed to take possession and control of his property. From then on the proceedings are *in rem*, until such time as a petition to remove the incompetency is filed, when the matter will again assume the character of an action *in personam*. It is a general rule both at common law and in equity that a plaintiff may not discontinue an action without the sanction of the court, express or implied: Cross' Estate, 309 Pa. 418, 422. In like vein we hold that respondent's motion to dismiss the present *lis pendens* requires the exercise of this court's discretion.

In the instant matter the learned hearing judge refused a motion for dismissal of the petition by Mr. Mulligan's counsel, stating (T. 175) : "There is no nonsuit in this court". In Axe Estate, 34 D. & C. 2d 625, 629,

the writer of this opinion faced a similar situation after Burney Axe, the respondent, had finished his testimony. Counsel for petitioner quickly followed respondent's motion to dismiss by request for leave of court to withdraw his petition and discontinue the proceeding. Brushing aside the technicality as to whether respondent had testified as a witness for either side, or should be considered by the court as in some other category, we said, page 630 of 34 D. & C. 2d: "In passing on the effect of counsel's formal motions, the court must not lose sight of the fact that regardless of the subsurface contest being waged by respondent's next of kin, the act under which this proceeding was brought is primarily a protective one and the welfare of the respondent is paramount". In this spirit we proceeded to consider the whole record in Axe, make fact findings, draw conclusions of law, and thus dispose of the case on its merits. This, Mr. Axe was entitled to, and the court owes just as much to Mr. Mulligan, the respondent here. If he is to continue in charge of his large business, no cloud should hang over him. If, on the other hand, he needs the protection of this court, we are well able to supply it.

With this concept of our responsibility to this elderly respondent we hold that the present motion of his counsel to dismiss should be denied. It does not follow that Mrs. Hagar's executor has any right to pursue the incompetency proceeding, however. On the contrary, we expressly hold that her rights as petitioner (whatever they were) abated with her death and did not survive to her estate. The matter should be referred back to the learned hearing judge in order that he may give such deliberate and judicious consideration to the case as is required for its proper conclusion. The proceeding should be terminated at a further hearing, or hearings, at which a formal finding of competency or incompetency should be made. Since a

further hearing may also involve the imposition of costs, Mrs. Hagar's executor is entitled to notice.

In accordance with the long standing practice of this court, costs will abide the event: 2 Hunter, Orphans' Court Commonplace Book (2d ed.) Costs, p. 10, §1.

Accordingly, we enter the following

## DECREE

And now, this March 20, 1969, the preliminary objection of petitioner's executor, that there is no legal basis to sustain respondent's motion to dismiss is sustained, the other objections are overruled, and the matter is referred back to the learned hearing judge for further proceedings consistent with the views expressed in the forgoing opinion.

## CONCURRING OPINION

KLEIN, J., March 20, 1969.—I am strongly of the opinion that when a petition is filed to adjudicate incompetency by a person having a legitimate interest in the matter and a citation issues, which is properly served upon the alleged incompetent, he becomes a ward of this court and thereupon it becomes our duty and responsibility to protect him from the world, his family and himself.

The legislature has vested exclusive jurisdiction of the administration and distribution of the real and personal estate of incompetents in the orphans' court. In the present case, Catherine Mulligan Hagar, on April 26, 1968, filed a petition for a citation to show cause why her father, Harold B. Mulligan, should not be adjudged an incompetent and a guardian of his estate appointed. The citation was duly served on respondent. On May 16, 1968, Judge Bolger appointed John L. Kelly, M. D., a psychiatrist, impartial medical expert. Judge Bolger held two hearings in the matter in June of 1968, at which time 14 witnesses, including Dr. Kelly and respondent, were heard and several

hundred pages of testimony were taken. The case was continued for six months by agreement of counsel.

Catherine Mulligan Hagar, petitioner, died in September of 1968. Respondent has filed a petition to show cause why the petition should not be dismissed by reason of her death. Preliminary objections were filed by the executor of the deceased daughter's estate.

Does the alleged incompetent have the right to a dismissal of the incompetency proceeding solely because of the death of the petitioner? I agree with the majority that he does not have such a right.

The orphans' court is a court of limited jurisdiction, exercising only such power as is given to it by statute, expressly or by necessary implication. Section 304 of the Orphans' Court Act of 1951, provides that the orphans' court shall have all legal and equitable powers required for or incidental to the exercise of its jurisdiction. In Freihofer Estate, 405 Pa. 165 (1961), Mr. Justice, now Chief Justice, Bell said:

"While it has often been said that the Orphans' Court is a Court of Equity, it is more accurate to say that 'in the exercise of its limited jurisdiction conferred entirely by statute, it applies the rules and principles of equity.' Williard's Appeal, 65 Pa. 265, 267. Mains's Estate, 322 Pa. 243, 247, 185 A. 222. See also: Webb Estate, 391 Pa. 584, 138 A. 2d 435".

When a case is once within the grasp of a court of equity or a court lawfully exercising equitable powers it will retain jurisdiction for all purposes in order to do complete justice. See Long v. Trader Horn Coal Co., 396 Pa. 203 (1959). See also Sley System Garages v. Transport Workers Union of America, 406 Pa. 370 (1962) ; Mellinger's Estate, 334 Pa. 180 (1939) ; Hurst v. Brennen (No. 1), 239 Pa. 216 (1913) ; Sears v. Scranton Trust Company, 228 Pa. 126 (1910) ; Fisher Estate, 26 D. & C. 2d 351.

In dealing with the estate of an incompetent the paramount consideration is his interest and the court pays no regard to the interests or expectations of those who may come after. See Bispham's Principles of Equity (7th Ed.), p. 732.

One who has instituted a lunacy proceeding is not entitled to dismiss the proceedings at his pleasure, without the consent of the court acting within its discretion and for the best interests of the public and the person whose sanity is under inquiry. Thus it has been held that where such person appears to be insane, the proceedings will be continued in the petitioner's name, despite the latter's desire to dismiss it: 44 C.J.S. Insane Persons §29.

Although counsel has not furnished us with any Pennsylvania decisions dealing with the question under consideration, our research indicates that the problem has been before many courts in other jurisdictions.

In Ex parte Trant, 238 Mo. App. 105, 175 S.W. 2d 161 (1943), the Missouri courts held that: (1) a lunacy proceeding is a proceeding in personam by the State; (2) that the public is interested in the welfare of the person alleged to be insane; and (3) that the informant who starts the proceeding cannot withdraw the complaint without the consent of the court.

In like vein, the Supreme Court of Tennessee in Reynolds v. Reynolds, 181 Tenn. 206, 180 S.W. 2d 894, 898 (1944), ruled that when a court has acquired jurisdiction of the person of the alleged lunatic, the proceeding cannot be dismissed without the consent of the court because the public has an interest in the matter. In reaching its decision the court relied upon State ex rel. Paxton v. Guinotte, 257 Mo. 1, 165 S.W. 718, 721, in which the court quoted with approval the following excerpt from Hughes v. Jones, 116 N. Y. 67:

"The primary object of the proceedings is not to benefit any particular individual, but to see whether

the fact of mental incapacity exists, so that the public, through the courts, can take control".

One of the leading cases on the subject, is In re Rhodes, 100 N. J. Eq. 370, 136 Atl. 408 (1927), in which the court said, p. 409:

"The Chancellor is general guardian of all infants, idiots, and lunatics, and, when they are brought before the court, the jurisdiction parens patriae obtains, and they are wards of court. Greenberg v. Greenberg (N.J. Ch.) 133 A. 768, 771. And the petitioner may not dismiss the proceedings to the detriment of a lunatic, who is a ward of court, without the Chancellor's consent; and he will not consent unless it is for the best interest of the lunatic so to do . . ."

The court went on to say:

". . . A proceeding for a commission of lunacy is begun in the interest of the public and of the person alleged to be of unsound mind. Hinton v. Brewer, 129 Ga. 232 at page 233, 58 S.E. 708. In that case complainant appears to have entered a dismissal without leave by the court. The proceeding is in the interest of the public to protect deficient citizens. In re Phillips, 158 Mich. 155, 122 N. W. 554. See, also, Galbreath v. Black, 89 Ind. 300, wherein it is held that a person instituting such proceeding has no right to dismiss it without consent of the court, which will be withheld in a proper case".

The court then directed that the proceedings be continued by the solicitors of the petitioner and in her name, notwithstanding her attempted withdrawal and desire to dismiss.

In my opinion, Harold B. Mulligan, the alleged incompetent, as a ward of this court, is entitled to our fullest protection. I think the impartial medical expert appointed by Judge Bolger, should be directed to re-examine the alleged incompetent. If he concludes that Harold B. Mulligan is competent, the hearing

judge would be warranted in dismissing the petition. If his conclusion is that respondent is incompetent, the hearing judge should take appropriate steps to protect his interests.