## *In re* JOSEPH NOWACK.

1. Habeas Corpus — Questions Reviewable — Insane Persons — Mental Competency.

Consideration of question of sufficiency of petition for commitment of a person under statute providing for commitment of insane, feeble-minded and epileptic persons because it alleged him to be a mentally incompetent person is passed on petition for *habeas corpus* in this court where subject is not briefed, with admonition to follow wording of statute (2 Comp. Laws 1929, § 6888 *et seq.*).

2. Insane Persons—Petition for Commitment—Sufficiency.

Petition for commitment of an alleged insane person *held,* insufficient where it contained allegations that he is laboring under delusion that he owns valuable property, that some oil company is going to purchase it for $600,000, that the judge and prosecuting attorney are preventing him from ob-

taining large sums of money, that he has a right to violate all the laws and injunctions issued by the circuit court, that he "believes himself to be bright and smart," that he has no respect for his neighbors and at times is guilty of mistreating dumb animals (2 Comp. Laws 1929, § 6888).

3. SAME—COMMITMENT—REGULARITY OF PROCEEDINGS.

Proceedings to commit an alleged insane person which did not comply with statute governing them in that only an informal hearing was had at which no testimony was taken *held*, a nullity (2 Comp. Laws 1929, § 6888).

4. HABEAS CORPUS—PARTIES—ATTORNEY AND CLIENT.

Any person may sue out a writ of *habeas corpus*; petition for such writ by attorney for former client, committed as an insane person, being entirely proper.

5. SAME—PARTIES—VOID COMMITMENT AS AN INSANE PERSON.

Person committed as an insane person as result of void commitment proceedings *held*, entitled to writ of *habeas corpus* from Supreme Court to prevent further detention against his will notwithstanding petition for writ of *habeas corpus* had been denied in circuit court because filed without participation by the guardian, commitment was regular on its face and there was no showing of restoration to sanity.

*Habeas corpus* proceedings by Dan Manason with accompanying certiorari to Date J. La Goe, Judge of Probate of Midland County, to obtain release of Joseph Nowack from the Traverse City State Hospital. Submitted January 8, 1936. (Calendar No. 38,716.) Writ granted March 2, 1936.

*Dan Manason, Chester Schwartz* and *George E. Brand,* for petitioner.

BUTZEL, J. An attorney who formerly represented Joseph Nowack of the township of Greendale, Midland county, Michigan, has filed in this court a petition for *habeas corpus* and an ancillary petition of certiorari to review the proceedings by which Nowack was committed to the State hospital at Traverse City, Michigan, and to secure his release. The return of the superintendent of the hospital and

the probate judge, together with the accompanying documents show that Nowack was committed by order of the probate court for the county of Midland and a guardian was appointed to look after his interests. The petition in the probate court alleged that Nowack had property of the value of $2,000 but correspondence shows that it was considered worth more and the bond of the guardian was later increased from $2,000 to $3,000. Notwithstanding this, Joseph was committed as a "public" patient.

Petitioner contends that the proceedings are fatally defective. They were instituted under 2 Comp. Laws 1929, § 6888 *et seq.*, which makes provisions for insane, feeble-minded and epileptic persons. The petition in the probate court contains no allegation that Nowack comes within such classification, but merely describes Nowack as mentally incompetent. One of the doctors who examined Alex Nowack, a brother of Joseph, on the same day that he diagnosed Joseph's condition, although he stated that Alex was an "insane person," in his affidavit described Joseph as "mentally incompetent." Provision for the custody and care of incompetent persons and their property may be found under the heading of "guardians and wards" in 3 Comp. Laws 1929, § 15763 *et seq.* It may be asserted, however, that the further allegations of the petition stating that Joseph requires treatment as an insane person cures the insufficient description. As 2 Comp. Laws 1929, § 6921, defines an insane person so as to include every species of insanity and to extend to every deranged person and to all of unsound mind other than feeble-minded, idiotic persons, imbeciles and epileptics, it may be claimed that the petition contains sufficient allegations so that a citation might issue to bring the alleged insane person into court where a proper showing must be made in any

event. This point is not briefed so we pass it with the admonition that it would be far better to follow the wording of the statute so as to remove all doubts.

We look further into the petition to ascertain whether it contains sufficient allegations of fact that would bring Nowack within the purview of 2 Comp. Laws 1929, § 6888. The petition states that Joseph is laboring under the delusion that he owns property worth a great deal of money and that some oil company is going to purchase it for $600,000. The belief or delusion that one owns oil, mining or other forms of property of great potential worth has been indulged in by many and particularly so before the depression, but, of itself, it is not an indication of insanity. Another allegation states that Joseph believes that the judge and prosecuting attorney are preventing him from obtaining large sums of money and that he has a right to violate all the laws and injunctions issued by the circuit court. We have heard of other disappointed litigants and there is quick and effective process to compel obedience to laws and injunctions. It is further alleged that Joseph "believes himself to be bright and smart, all of which is just an insane delusion." Again we have heard of similar characteristics in others who do not require hospitalization. It is finally alleged that Nowack has no respect for his neighbors or animals and at times he is guilty of inhuman treatment of dumb animals. The law makes due provision for such conduct. It may be claimed that all of these facts together indicate some form of insanity. Nowhere in the petition, however, are facts alleged showing the necessity or propriety of proceeding under 2 Comp. Laws 1929, § 6888, for the purpose of committing Nowack to an institution.

Although the affidavits of the two physicians do state that Nowack is mentally diseased, there is no

showing whatsoever that the judge conducted an inquest as provided by law. 2 Comp. Laws 1929, § 6888. Following the service of the citation on Joseph's brother Alex, who was also found to be insane, an informal proceeding took place in Joseph's case. The record does not show that any testimony was taken. The commitment of a person to an insane asylum is too serious to permit any slipshod methods or failure to strictly comply with the provisions of the law. Without such strict compliance, proceedings like those in the instant case are a nullity. *In re Storick,* 64 Mich. 685; *In re O'Neil,* 239 Mich. 450.

After the commitment, *habeas corpus* proceedings were brought in the circuit court for Grand Traverse county. The judge held that the attorneys who brought the proceedings did not have a sufficient interest to proceed without the guardian, that the commitment being regular on its face, the sole question was whether Nowack had regained his sanity and should be released. There was no showing of such restoration to sanity and the petition was denied.

Thereupon, Mr. Brand was retained as counsel to assist in the present proceedings. Before he would proceed he insisted on interviewing Nowack in the presence of the superintendent of the hospital and an interpreter. Nowack made it clear that he did not desire any attorneys to secure his release, stating that he wished to remain in the hospital until the oil company paid what he believed was due him, whereupon he and his brother Alex intended to go either to their uncle's or the old country; that both he and his brother believed that the oil company was about ready to settle and pay what he believed was due to them, the respective date of settlement being fixed by the brother as the beginning of May, 1936. In the interview, it appeared that Joseph, partic-

ularly in view of this belief, was willing to enjoy the comforts of the hospital until the settlement day arrived, believing as he did that when that date came he would be free to leave with his brother; that Joseph did not understand that he had been committed as an insane person and it is very doubtful whether he understood the legal significance of such commitment; that when he was told about it, he asked the superintendent of the hospital to verify it and after some hesitation, he concluded that if the doctors thought him insane, he was satisfied. The guardian was also notified that an effort was being made to obtain Nowack's release. He stated that the responsibility was up to the lawyers.

It is claimed that the attorneys had no right to sue out the petition for *habeas corpus*. It was proper that an attorney knowing that a former client was unlawfully restrained of his liberty and had been temporarily divested of his property by the appointment of a guardian, all without lawful proceedings, should file a petition for *habeas corpus* and an ancillary writ of certiorari. Any person may sue out a writ of *habeas corpus*. *In re Mould,* 162 Mich. 1.

The record leaves little question but that Joseph is of low mentality and unquestionably requires help, and probably to such an extent that he needs a guardian. Whether he needs hospitalization or not can only be determined in the manner set forth in section 6888 *et seq*. The proceedings were a nullity and Joseph may not be detained against his will by virtue of them. Inasmuch as the order of commitment was regular on its face, no costs will be allowed.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.