*In re* FULLER.

1. HABEAS CORPUS—COMMITMENT—STATUTES—AMENDMENTS.

Commitment proceedings in 1945 are governed by statutory provisions in effect at time they are held, subsequent amendments not being material in later habeas corpus proceeding (CL 1929, § 6888, as amended by PA 1943, No 250, and PA 1949, No 313).

2. SAME—FILING OF PETITION—CONSTRUCTION OF STATUTES.

The statute providing for the filing of a petition for habeas corpus by "some person" other than the one whose alleged unlawful restraint is in issue is to be liberally construed (CL 1948, § 637.9).

3. SAME—SPOUSES—JURISDICTION.

Any person, including a spouse, may sue out a writ of habeas corpus and confer jurisdiction to inquire into the matter of an alleged illegal restraint of another person (CL 1948, § 637.9).

4. SAME—PETITION—INSANE PERSONS—VALIDITY OF COMMITMENT.

Petition for habeas corpus by husband of person, claimed to have been committed to a hospital as a mentally incompetent person by the probate court after hearing at which the wife was not present and whose absence was not made to appear to the court as improper and unsafe, *held*, sufficient to confer jurisdiction upon Supreme Court to determine questions raised as to validity of wife's commitment (CL 1929, § 6888, as amended by PA 1943, No 250).

5. INSANE PERSONS—APPEARANCE AT HEARING—JUSTIFICATION FOR DENIAL.

The determination as to whether or not it would be improper and unsafe to permit a person whose sanity is the subject of inquiry to appear at the hearing or to render removal

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 25 Am Jur, Habeas Corpus § 122.
[4] 25 Am Jur, Habeas Corpus § 84.
[6] 28 Am Jur, Insane and Other Incompetent Persons §§ 12, 14, 16, 32, 33.
[6] Necessity and sufficiency of notice to alleged incompetent of application for appointment of guardian or committee. 23 ALR 594.
[8] 28 Am Jur, Insane and Other Incompetent Persons § 12.

from place of commitment improper or unsafe is a matter for determination by the court and not a hospital superintendent or physicians (CL 1929, § 6888, as amended by PA 1943, No 250).

6. SAME—SANITY PROCEEDING—PRESENCE OF ALLEGED INSANE PERSON.
A person must be present at the hearing in which his sanity is in issue unless such appearance is made to appear to the court holding the hearing to be improper and unsafe (CL 1929, § 6888, as amended by PA 1943, No 250).

7. SAME—SANITY PROCEEDING—JUSTIFICATION FOR DENIAL OF PRESENCE AT HEARING OF ALLEGED INSANE PERSON—EVIDENCE.
Letter from hospital superintendent to probate judge that person whose sanity was in issue in proceeding brought for testing same was temporarily a patient in his institution and that it was improper and unsafe for her to appear in the court at the time of the hearing without setting forth supporting facts was insufficient to justify a denial to such person of her right to be present in court and take such part in the proceeding as she might desire, hence her commitment was null and void, there being no other justifying evidence (CL 1929, § 6888, as amended by PA 1943, No 250).

8. SAME—SANITY PROCEEDING—STATUTES.
A probate court is without jurisdiction to commit a person as insane, where provisions of the statute relative to sanity proceeding are not complied with, since such provisions are mandatory (CL 1929, § 6888, as amended by PA 1943, No 250).

9. SAME—SANITY PROCEEDING—STRICT COMPLIANCE WITH STATUTE.
Proceedings taken for an adjudication of insanity against an individual should require the strictest compliance with all the pertinent statutory provisions, as such determination affects the rights of the individual to the enjoyment of life, liberty and property (CL 1929, § 6888, as amended by PA 1943, No 250).

10. SAME—JURISDICTION OF PROBATE COURT—STATUTES.
The probate court derives its jurisdiction in sanity proceedings from the statute and the provisions of the statute must be strictly pursued (CL 1929, § 6888, as amended by PA 1943, No 250).

11. SAME—PRESUMPTION OF SANITY.
A person whose sanity is being adjudicated is presumed sane

until the contrary fact is made to appear (CL 1929, § 6888, as amended by PA 1943, No 250).

12. SAME—PRESUMPTION OF SANITY—EVIDENCE.

Hearsay testimony that petitioner's wife had attempted to commit suicide and had indulged in fits of crying but not "to a great extent" and that the attempted suicide resulted from a misunderstanding of the parties *held*, insufficient to overcome presumption of sanity, hence commitment was void (CL 1929, § 6888, as amended by PA 1943, No 250).

13. SAME—CERTIFICATES OF EXAMINING PHYSICIANS.

An adjudication of insanity may not be based solely on the certificates of physicians appointed by the probate court to examine the alleged insane person (CL 1929, § 6888, as amended by PA 1943, No 250).

14. SAME—SANITY PROCEEDING—REVIEW BY SUPREME COURT.

The Supreme Court does not weigh the testimony taken at a sanity proceeding but does determine whether the requirements of the statute were complied with and whether there was sufficient testimony taken on the hearing to overcome the presumption of sanity and to justify an affirmative finding that the person was at the time insane (CL 1929, § 6888, as amended by PA 1943, No 250).

15. APPEAL AND ERROR — QUESTIONS REVIEWABLE — CONSTITUTIONALITY OF STATUTES—SUFFICIENCY OF PHYSICIANS' AFFIDAVITS.

Questions as to constitutionality of statute relative to conduct of sanity proceedings and whether affidavits of examining physicians were in compliance with statutory requirements are not determined, where commitment was void because of failure to comply with statute as to presence of person whose sanity was in issue at hearing and of insufficiency of evidence upon which to base a finding of insanity (CL 1929, § 6888, as amended by PA 1943, No 250).

Habeas corpus with accompanying certiorari by J. Douglas Fuller to obtain release of his wife from Wayne County General Hospital. Submitted June 10, 1952. (Calendar No. 45,303.) Writ granted October 6, 1952.

*Black, Bush & Bradt,* for petitioner.

*Francis T. McGann, guardian ad litem.*

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

CARR, J.   On the 10th of May, 1945, the probate court of Wayne county entered an order adjudging Helen Fuller to be an insane person and ordering her committed to the Ypsilanti State Hospital or to the Eloise Hospital.   She was confined to the latter institution, now known as the Wayne County General Hospital, and is an inmate thereof at the present time.   The instant proceeding was brought by her husband for the purpose of obtaining her release. The petition filed alleges that the order of commitment was unauthorized and illegal in that provisions of the State and Federal Constitutions with reference to due process of law were violated, and also that certain mandatory provisions of the statute under which the proceeding was had were not followed.

On October 12, 1951, a writ of habeas corpus was issued by this Court, directed to the superintendent of the hospital, with ancillary writ of certiorari to the probate court.   Returns to both writs have been duly filed.   It appears therefrom that the basis for Mrs. Fuller's detention is the order above mentioned. The proceedings taken prior to the commitment, insofar as material, are set forth in the return to the writ of certiorari.

The petition seeking an adjudication as to Mrs. Fuller's sanity was filed by her husband on April 12, 1945.   It was stated therein as the principal bases for the allegation of insanity that she was depressed and that she had attempted to commit suicide.   She was examined by 2 physicians on whose certificates a temporary order for her restraint in Eloise Hospi-

tal, pending the hearing on the application, was made.

The statutory provisions governing the procedure at the time of the commitment were set forth in CL 1929, § 6888 (Stat Ann § 14.811), as last amended by PA 1943, No 250. Subsequent amendments to the section are not material in the present controversy.* Pursuant to the statute the probate court, following the filing of the petition, fixed a date for hearing and appointed 2 physicians to examine Mrs. Fuller. The examination was duly held and the physicians filed their respective reports indicating their conclusions as to her mental condition.

In accordance with the statutory mandate, notice of hearing was given to the husband and sister of Mrs. Fuller, and was also served on her. However, she was under detention in the hospital at the time of the hearing and was not permitted to attend. Neither was she represented unless it can be said that her husband, who filed the petition on which the proceeding was had, was charged with the obligation of protecting her rights. The reasons for Mrs. Fuller's absence will be discussed more fully hereafter. On the hearing, the only testimony requiring specific consideration was that of Mr. Fuller who was sworn and examined by the probate judge. The order of commitment followed.

It is claimed in the instant proceeding that the requirements of the statute were not observed in the probate court, and that in consequence Mrs. Fuller's commitment was unauthorized and void. It is urged that the averments of the petition on which the hearing was held were insufficient to give the court jurisdiction, and that the affidavits of the examining physicians were deficient in that they did not set forth material facts in support of the conclusions

---

* See CL 1948, § 330.21, as amended by PA 1949, No 313 (Stat Ann 1951 Cum Supp § 14.811).

stated therein. It is also urged that precluding her from attending the hearing constituted an invasion of her rights under the statute, and that the testimony taken did not support the conclusion of the probate judge on which his order of commitment was based. It is also argued that the probate proceeding, as actually conducted, failed to satisfy constitutional guaranties as to due process of law.

On behalf of the superintendent of the Wayne County General Hospital it is claimed that the petition of Mr. Fuller for writs of habeas corpus and certiorari should be dismissed on the ground that he was without right or authority to present it to this Court. On the basis of certain affidavits that have been filed in the matter it is argued that Mrs. Fuller is opposed to the proceeding. An attempt has been made to show that she is antagonistic to her husband because of his action in filing the petition in probate court, and perhaps for other reasons, and that it is against her wishes that he undertake at this time to do anything in her behalf. The claim that the husband should not be permitted to maintain the instant proceeding seems to be predicated on the theory that her wishes should be regarded as controlling, and that her mental condition is such that she should be deemed competent to determine what action, if any, should be brought in her behalf and who should represent her.

The statute relating to habeas corpus proceedings specifically provides for the filing of the petition by "some person" other than the one whose alleged unlawful restraint is in issue. CL 1948, § 637.9 (Stat Ann § 27.2252). For obvious reasons such provision has been liberally construed. In the case of *In re Joseph Nowack,* 274 Mich 544, 549, in which the petition was filed by an attorney, it was said:

"It is claimed that the attorneys had no right to sue out the petition for *habeas corpus*. It was proper that an attorney knowing that a former client was unlawfully restrained of his liberty and had been temporarily divested of his property by the appointment of a guardian, all without lawful proceedings, should file a petition for *habeas corpus* and an ancillary writ of certiorari. Any person may sue out a writ of *habeas corpus*. *In re Mould,* 162 Mich 1."

In the case of *In re Mould,* cited by the Court in the *Nowack Case, supra,* the right of an aunt of the child whose custody was in question to institute the proceeding was recognized. A petition filed by a parent, a spouse, a close relative, an attorney, or a friend, has been recognized by this Court as sufficient to confer jurisdiction to inquire into the matter of an alleged illegal restraint. The cases herein cited with reference to other matters involved in the controversy fairly indicate the situation in this regard. In the case at bar, notwithstanding the claimed aversion on the part of Mrs. Fuller to any action being taken in her behalf by her husband, we think that his petition was sufficient to charge this Court with the duty of determining the questions raised. It may be noted in passing that the issuance of the writs of habeas corpus and certiorari following the filing of the petition was not opposed on the ground that Mr. Fuller was not entitled to file it.

As before noted, Mrs. Fuller was given notice of the hearing of May 10, 1945, but was not permitted to be present. The statutory provision as set forth in the section above cited, relating to the procedure to be observed in a matter of this character, is as follows:

"Such alleged mentally diseased person shall have the right to be present at such hearing, unless it shall be made to appear to the court, either by the certificate of the medical superintendent in charge of

such hospital, home or retreat to which he may have been temporarily admitted, or by the certificate of 2 reputable physicians, that his condition is such as to render his removal for that purpose, or his appearing at such hearing improper and unsafe."

The language quoted clearly implies that the court must, on the basis of the showing made by the certificate of the superintendent of the hospital or by the certificates of 2 physicians, determine whether it would be improper and unsafe to permit the one whose sanity is the subject of the inquiry to appear at the hearing, or to render his removal from the institution improper and unsafe. The statute may not be read as intending to delegate to the hospital superintendent or to physicians the final authority to determine that issue. Such a construction would raise a serious question as to the validity of the provision quoted. *Dation* v. *Ford Motor Co.,* 314 Mich 152 (19 NCCA NS 158). Under the specific language of the statute the presence at the hearing of the alleged insane person is required unless it is "made to appear to the court" that such appearance would be improper and unsafe.

The return to the writ of certiorari contains a photostatic copy of a letter addressed to the probate court of Wayne county, under date of April 17, 1945, by the superintendent of the Eloise Hospital. Said letter was apparently filed on May 10, 1945, the date of the hearing. It referred to the fact that Mrs. Fuller was at the time a patient in the hospital under a temporary order issued by the court, and to the provisions of the statute with reference to her right to be present at the hearing. Following such references it was stated:

"I hereby certify that it is improper and unsafe for the above mentioned patient to appear in your court at the time of the hearing regarding the alleged mental disease."

No facts were set forth in the letter as the basis for the certification. Apparently the probate judge accepted it as a sufficient showing justifying a denial to Mrs. Fuller of the right to be present in court and to take such part in the proceeding as she might desire. It is argued on behalf of petitioner that such certificate, which merely indicated the opinion of the superintendent without any reference to facts on which he based it, was wholly insufficient to justify the action taken, and that in legal effect such attempted certification was a mere nullity.

In the case of *In re Harold H. Roberts,* 310 Mich 560, a petition for a writ of habeas corpus was filed by the mother of an inmate of the Kalamazoo State Hospital. There, as in the case at bar, the alleged insane person was confined in the hospital under an emergency commitment at the time of the hearing in probate court, and was not present at such hearing. There was no showing that his condition was such as to render his appearance improper and unsafe. After quoting the provisions of the statute above set forth, it was said:

"Under the above statute Roberts was entitled to be present at the hearing unless it was shown to the court that his condition was such as to render his removal from the hospital for that purpose improper and unsafe. The provisions of the statute are mandatory, and as they were not complied with, the probate court was without jurisdiction to commit him as an insane person. In the case of *In re Phillips,* 158 Mich 155, 159, we said: .

"'Proceedings taken for an adjudication of insanity against an individual should require the strictest compliance with all the statutory requirements provided. The determination affects the rights of the individual to the enjoyment of life, liberty, and property. Courts will ever protect the rights of the individual who is so unfortunate as to

1952] *In re* Fuller. 575

be called upon to make a showing to maintain his or her mental integrity.'

" 'The probate court derives its jurisdiction from the statute. To obtain jurisdiction in this case, therefore, the provisions of the statute should have been strictly pursued.' *In re Greenman,* 212 Mich 687.

" 'The commitment of a person to an insane asylum is too serious to permit any slipshod methods or failure to strictly comply with the provisions of the law. Without such strict compliance, proceedings like those in the instant case are a nullity.' *In re Joseph Nowack,* 274 Mich 544, 548.

"See, also, *In re Maffett,* 304 Mich 173; *In re Petition of Martin,* 248 Mich 512."

There being no basis for a determination by the probate judge, on any showing of facts made to him, that it would be unsafe and improper, or detrimental to the welfare of Mrs. Fuller, to permit her presence at the hearing, the conclusion necessarily follows that the requirement of the statute was not observed. She was entitled to the right granted to her by the law under which the proceeding was conducted. The failure to observe the statute in this respect rendered her commitment null and void.

Another question of a serious nature is raised by petitioner's claim that at the hearing in the probate court on May 10, 1945, there was no competent testimony tending to prove that Mrs. Fuller was at that time an insane person. The statute, above cited, in force at the time required that:

"The court shall also institute an inquest, and take proofs, as to the alleged insanity, feeble-mindedness, or epilepsy of such person, and fully investigate the facts before making such order, and, if no jury is required, the probate court shall determine the question of such alleged mental disease of such person."

The proofs taken on the hearing in question consisted of a statement made by a deputy sheriff and brief testimony given by the husband of Mrs. Fuller. The deputy stated that Mrs. Fuller was 38 years of age, married, that she was brought to Eloise on an emergency order after a suicide attempt, and that the petition in the case was signed by the husband. The testimony of Mr. Fuller, which is relied on as tending to support the claim of insanity, was as follows, the examination being conducted by the probate judge:

"*Q.* You are the husband of Helen Fuller?

"*A.* Yes, sir, I am.

"*Q.* She is about 38 years of age?

"*A.* Yes, sir.

"*Q.* On the 12th of April, you signed this petition and you said that she was—that people were talking about her and were against her; is that right?

"*A.* Yes, sir, to a degree.

"*Q.* Was she depressed and cries for long periods of time for no apparent reason?

"*A.* I wouldn't say that.

"*Q.* That is in the petition.

"*A.* Well, I didn't understand that part of it.

"*Q.* Did she indulge in fits of crying? You can understand that in plain English.

"*A.* Yes, sir, but not to a great extent.

"*Q.* Did she attempt suicide by jumping into a pond at Plymouth?

"*A.* That is what I understand; I heard about it.

"*Q.* Did you think she was in need of hospital care at that time?

"*A.* Yes, sir.

"*Q.* What is her condition now?

"*A.* I would like to have it postponed. I was responsible for her making that attempt, that night. It was a misunderstanding between us and I would like —it was—I want to do what is right but I sometimes wonder after seeing her since, I would like to have it postponed, if possible and try to do what is right.

"*Q.* If she is mentally sick, I think the public institutions are about as good as you can find anywhere.

"*A.* I appreciate that.

"*Q.* It takes a lot of money in a private institution.

"*A.* Yes, sir.

"*Q.* Under the circumstances you would like to have it adjourned to see whether or not—according to Mr. Smith—

"*Mr. Smith:* If it is adjourned, they can't commence the treatment.

"*Q.* It is a mistake to have it adjourned. They couldn't cut out a scientific course of treatment for her condition as long as she is there temporarily; they will have to leave her status quo. They can't treat her. When anyone has a sudden attack or condition of this kind, the earlier that treatment can be obtained, the recovery will be earlier. You are not doing anything in her interest by postponing it. They couldn't treat her if you postpone it. You are holding it up for 2 weeks. The quicker she is committed, the better. If she recovers, she can be returned so there is nothing gained by looking at it in a washy-washy fashion. People must take things as they are, not as they would like them to be. She needs hospital care, it is serious and she needs it now, not 2 weeks from now.

"*A.* Could I speak to my sister-in-law for a few minutes? We will be right back in.

"*Q.* Certainly you may; go right ahead."

Subsequently Mr. Fuller re-entered the courtroom, and said:

"I guess the best thing to do is what is best for her."

The testimony has been quoted in full in order that the situation may clearly appear. Apparently the questions propounded by the judge of probate to Mr. Fuller were based on the statements contained in the petition, and his answers tend to indicate that

at the time of the hearing he was unwilling to characterize his wife's conduct in the terms that had been set forth in the petition. He declined to say that she was depressed and cried for long periods of time without apparent reason. While admitting that she did indulge in fits of crying, he modified it by saying such conduct was not indulged in "to a great extent." Reference was made to her alleged attempt to commit suicide. The answer of the witness indicated that his knowledge of the occurrence referred to was based on hearsay. His further testimony suggests that Mrs. Fuller's conduct, if she did attempt suicide, resulted from a misunderstanding between the parties. He was not questioned for the purpose of bringing out the details of the occurrence. Bearing in mind that Mrs. Fuller was presumed to be sane until the contrary fact was made to appear, we do not think the testimony was sufficient to overcome that presumption. Whether the attempt to commit suicide, if there was such, indicated insanity at that time depended on the facts and circumstances involved, concerning which no inquiry was made. It may not be said that the hearing as conducted was a sufficient compliance with the mandate of the statute to the probate judge to "fully investigate the facts before making such order."

The situation here is analogous to that involved in *Re Haines,* 315 Mich 657. There, this Court after considering all of the testimony offered on a sanity hearing in probate court came to the conclusion that the testimony "did not in any reasonable sense tend to prove insanity." The commitment was accordingly held illegal. Attention in the case at bar has been directed to the statements in the affidavits of the examining physicians. A similar issue was involved in the *Haines Case,* and with reference thereto it was said:

"In reaching the above conclusion we are mindful that at the hearing the probate judge had before him the certificates of the 2 duly appointed physicians, each of whom certified that Harold H. Haines was an insane person; and doubtless the probate judge in so determining relied mainly, if not wholly, on such certificates. But it is settled law that in the absence of other competent proof an adjudication of insanity may not be based on the certificates of physicians appointed by the court to examine the alleged insane person. *In re Clifford,* 303 Mich 84; *In re Buck,* 308 Mich 634."

The language quoted is applicable in the case at bar. While we do not weigh the testimony taken in a proceeding of this kind, it is our duty to determine whether the requirements of the statute were complied with and whether there was sufficient testimony taken on the hearing to overcome the presumption of sanity and to justify an affirmative finding that Mrs. Fuller was at the time insane. Under the holding in the *Haines Case, supra,* and in other prior decisions of this Court, it must be held that the finding and the commitment based thereon were not supported by competent proofs. *In re Myrtle Davis,* 277 Mich 88; *In re Ryan,* 291 Mich 673; *In re Gordon,* 301 Mich 224; *In re Aslanian,* 318 Mich 55; *In re Fidrych,* 331 Mich 485; *In re Floyd Brooks,* 331 Mich 628.

In the respects above discussed, it is our conclusion that the statute was not followed, that in consequence the commitment of Mrs. Fuller was illegal, and that she is now entitled to her release. It is unnecessary to discuss the constitutional questions raised by petitioner, to pass specifically on the sufficiency of the petition initiating the sanity proceeding, or to determine whether the affidavits of the examining physicians were in compliance with the statutory requirements.

An order will enter in accordance with the foregoing opinion.

DETHMERS, BUSHNELL, and REID, JJ., concurred with CARR, J.

SHARPE, J., concurred in the result.

BOYLES, J. (*concurring in part*). I agree with Justice CARR that there was an absence of any competent testimony at the hearing in probate court to prove insanity. For that reason the patient must be released. I do not find it necessary to concur in some of the other reasons given.

The testimony has been quoted in full. It does not tend to prove insanity.

"Among other questions presented is petitioner's contention that at the hearing in the probate court no competent testimony was produced tending to prove petitioner's alleged insanity, and therefore his commitment by the probate court was absolutely void and his present detention is illegal.

"On review by certiorari of the proceedings in the probate court we do not pass upon the weight of testimony. Instead the limit of such review is to determine whether any competent testimony was produced from which it could reasonably be found that petitioner was an insane person. * * *

"We are unable to reach any other conclusion than that the testimony taken did not in any reasonable sense tend to prove insanity, and in the absence of any proof of insanity the commitment of petitioner was and is illegal. * * *

"It is not within the province of this Court in this proceeding to determine whether petitioner was insane at the time of his commitment or whether he is now insane. But on the record before us we must and do hold that the proceedings in the probate court were fatally defective and that Harold H. Haines is

entitled to be discharged." *In re Haines,* 315 Mich 657.

To the same effect, see *In re Gordon,* 301 Mich 224; *In re Aslanian,* 318 Mich 55, 58.

I do not agree that there was no showing made that the condition of the patient was such as to render her removal from Eloise hospital improper and unsafe for the purpose of appearing at the hearing. Such a showing was made, in accordance with the statute, where it provides that:

"Such alleged mentally diseased person shall have the right to be present at such hearing, unless it shall be made to appear to the court, either by the certificate of the medical superintendent in charge of such hospital, home or retreat to which he may have been temporarily admitted, or by the certificate of 2 reputable physicians, that his condition is such as to render his removal for that purpose, or his appearing at such hearing improper and unsafe." CL 1929, § 6888, as last amended by PA 1943, No 250 (Stat Ann 1943 Cum Supp § 14.811).*

The patient had been committed to Eloise hospital by order of the court and was confined there at the time of the hearing. The medical superintendent of the hospital certified to the court as follows:

"I hereby certify that it is improper and unsafe for the above mentioned patient to appear in your court at the time of the hearing regarding the alleged mental disease."

Justice CARR relies on *In re Harold H. Roberts,* 310 Mich 560, where there was a complete absence of any such showing, either by the medical superintendent or by any physicians, or otherwise. In that case the attorney general filed a memorandum with the court confessing error in the proceedings because

---

* Subsequent amendments have no bearing.

of lack of such compliance with the statute, and on that ground alone this Court ordered release of the patient.

See, also, *In re Aslanian, supra,* pp 58, 59.

It is not necessary to discuss additional questions raised as to why the patient should or should not be entitled to release. Either they have been considered by us in previous opinions or are not likely to arise again if another proceeding should be instituted to determine whether the patient is now insane.

There being an absence here of any competent testimony to prove insanity, the statute has not been complied with in that regard. For that reason I concur in the entry of an order discharging the patient from custody.

BUTZEL, J., concurred with BOYLES, J.

The late Chief Justice NORTH did not sit.