*In re* ALLISON.
## HANNEMAN *v.* MOUNT PLEASANT STATE HOME & TRAINING SCHOOL.

1. INSANE PERSONS—SANITY PROCEEDING—STATUTES.

   Proceedings taken for an adjudication that a person is insane should be in strict compliance with the statutory requirements (CL 1929, §§ 6887, 6888).

2. SAME—PETITION—COMMITMENT—FEEBLE-MINDEDNESS—FINDING OF THE PROBATE COURT.

   Petition and order for commitment of 17-year-old boy as a mentally-defective person under statute relating to commitment of insane, feeble-minded, epileptic or mentally-diseased persons were fatally defective, where basis for commitment is assumed to be feeble-mindedness under record disclosing no claim or proof of insanity, epilepsy or mental disease and there was no finding of feeble-mindedness by the probate court (CL 1929, §§ 6887, 6888).

3. WORDS AND PHRASES—FOSTER PARENT.

   A foster father is a man who has performed the duties of a parent to the child of another by rearing the child as his own child.

4. INSANE PERSONS—SERVICE OF NOTICE OF HEARING—FOSTER FATHER—NEXT OF KIN.

   Service of notice of hearing upon foster father of child involved in sanity proceedings was proper but did not fulfill the statutory requirement of service upon a blood relative or next of kin of the child involved (CL 1929, § 6888).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 28 Am Jur, Insane and Other Incompetent Persons §§ 12, 30, 32.

[1, 4, 5] Waiver of notice of inquisition proceeding by alleged incompetent. 152 ALR 1247.

[2, 6–8] 28 Am Jur, Insane and Other Incompetent Persons § 26.

[2, 6–8] Test or criterion of mental condition within contemplation of statute providing for commitment of persons because of mental condition. 158 ALR 1220.

5. SAME—JURISDICTION—NOTICE OF HEARING—CERTIFICATE.

Probate court did not acquire jurisdiction to order commitment of a minor to an institution for the feeble-minded, where no notice of hearing in proceedings for commitment was served on members of the minor's family as required by statute nor certificate made by the court giving reasons for dispensing with the service (CL 1929, §§ 6887, 6888).

6. SAME—COMMITMENT—PETITION — CERTIFICATES—CONCLUSIONS— FINDING—EVIDENCE.

A petition for commitment of one as a feeble-minded person and certificates of the examining physicians must set forth facts, not mere conclusions, since it is the probate judge who must make the determination of feeble-mindedness, a determination which must be predicated upon a showing of facts, not merely upon opinions of others, whether laymen or physicians (CL 1929, § 6887).

7. SAME—COMMITMENT—PHYSICIANS' CERTIFICATES—CONCLUSIONS.

Averments in physicians' certificates in proceedings to commit 17-year-old minor as a feeble-minded person that he was a low-grade type, unable to add or subtract, knew nothing about the State officials, had no conception of distance, had a mentality of 6 years of age, would never be of any greater mentality nor able to support himself, had made little progress in school, could not answer some of the very simple questions, tended to associate with small children and girls, was not safe without watching, was a moron, I.Q. 6–8 and condition would not improve but get worse *held*, primarily conclusions and opinions which substantially failed to state facts and conclusions upon which the opinions were based (CL 1929, § 6887).

8. SAME—CERTIORARI—RECORD—REFERENCE TO PHYSICIANS' CERTIFICATES.

Record on certiorari in reviewing commitment proceedings of 17-year-old boy, held some 22 years prior to making of return, which did not contain a summary of the testimony nor a showing that the guardian *ad litem* had personal knowledge of the facts and circumstances indicative of feeble-mindedness in the boy and order of commitment made reference to a full investigation of the matter without adding details except to mention the physicians' certificates failed to show there had been a strict compliance with the statute in committing the minor to a State institution (CL 1929, § 6887).

Habeas corpus by Minnie Hanneman, acting on behalf of Delbert Spaulding Allison, with ancillary writ of certiorari to Midland probate judge, to obtain release from Mount Pleasant State Home & Training School. Submitted February 2, 1953. (Calendar No. 45,548.) Petitioner discharged April 13, 1953.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, for the people.

*John H. Eliasohn,* for petitioner.

Adams, J. On December 23, 1930, Delbert Allison, then 17 years of age, was committed to the Michigan Home & Training School by order of the probate judge of Midland county as a mentally-defective person.

Upon petition of Minnie Hanneman, natural mother of Delbert, a writ of habeas corpus issued on June 6, 1952, directed to the medical superintendent of the Mount Pleasant State Home & Training School with ancillary writ of certiorari to the probate judge to inquire into the cause of his detention. Returns have been filed which show proceedings taken prior to the commitment. Principal errors in the commitment, as charged by petitioner, are failure of the probate court to follow the statutory requirements in service of process, failure to prove facts constituting feeble-mindedness in Delbert Allison, and failure to hold a proper hearing.

Proceedings leading to the commitment were governed by PA 1923, No 151, §§ 10, 11 (CL 1929, §§ 6887, 6888). Subsequent amendments are not applicable to a decision in this cause.

Such proceedings must be in strict conformity with statutory requirements.

"Proceedings taken for an adjudication of insanity against an individual should require the strictest compliance with all the statutory requirements provided. The determination affects the rights of the individual to the enjoyment of life, liberty, and property. Courts will ever protect the rights of the individual who is so unfortunate as to be called upon to make a showing to maintain his or her mental integrity." *In re Phillips,* 158 Mich 155, as quoted with approval in *Re Fuller,* 334 Mich 566.

"The commitment of a person to an insane asylum is too serious to permit any slipshod methods or failure to strictly comply with the provisions of the law. Without such strict compliance, proceedings like those in the instant case are a nullity." *In re Joseph Nowack,* 274 Mich 544, as quoted with approval in *Re Fuller, supra.*

The petition filed with the probate court for commitment, and with which we are now concerned, alleged on information and belief that Delbert Allison was a mentally-defective person. The order of commitment, as well as the certificates of the examining physicians, described him in the same manner. As previously stated, proceedings were brought under CL 1929, § 6887 which provides for the commitment of insane, feeble-minded, epileptic or mentally-diseased persons. This section is a part of PA 1923, No 151, and is not related to the provisions of PA 1929, No 281,* which permits a mentally-deficient person to be rendered incapable of procreation by order of the probate court. That act defines a mentally-deficient person while the act here considered contains no such definition.

We must presume from the nature of the certificates and the order of commitment that the court considered the basis for the commitment to be feeble-

---

* CL 1929, § 6645 *et seq.* (See, as amended, CL 1948, § 720.301 *et seq.* [Stat Ann 1951 Cum Supp § 14.381 *et seq.*]).—REPORTER.

mindedness since the record discloses no claim or proof of insanity, epilepsy or mental disease. Feeble-minded persons are divided into 3 groups or types, according to Dorland's, The American Illustrated Medical Dictionary (17th ed), the 3 being idiots, with a mental age below 2 years; imbeciles, with a mental age between 2 and 7 years; and morons, with a mental age between 7 and 12 years.

It is altogether possible, and in fact quite likely, that many persons who are to a degree mentally defective would not fall into any of the 3 named categories. As a matter of fact, PA 1929, No 281, referred to above, includes moral degenerates and sexual perverts in its definition of a mentally-defective person. In other words, while a feeble-minded person would be mentally defective, it would not necessarily follow that a mentally-defective person would be feeble-minded.

The court's failure to find feeble-mindedness, as such, before ordering commitment is, at very minimum, indicative of failure to have strict compliance with the statute.

CL 1929, § 6888, required notice of the hearing to be served on specified persons, the pertinent portion of the section reading:

"Notice of such petition and of the time and place of hearing thereon, shall be served personally, at least 24 hours before the hearing, upon the person alleged to be so mentally diseased and any sheriff, officer, or county agent who made the petition, father, mother, husband, wife or some one next of kin, of full age, of such alleged mentally-diseased person, if there be any such known to be residing within the county, and upon such of said relatives residing outside of the county and within this State as may be ordered by the court, and also upon the person with whom such alleged mentally-diseased person may reside, or at whose house such person may be.

This notice may be served in any part of the State. The court to whom the petition is presented may dispense with such personal service or may direct substituted service to be made upon some person to be designated by it. The court shall state in a certificate to be attached to the petition its reason for dispensing with personal service of such notice, and if substituted service is directed, the name of the person to be served therewith. In such cases the court shall appoint a guardian *ad litem* to represent such mentally-diseased person upon such hearing, and in other cases it may appoint such guardian *ad litem*."

The record shows that notice of hearing was served upon Delbert Allison, Francis B. Shelby, George H. Miller, Alice Miller, and Chester E. Morris. The 3 last named are not related to Delbert Allison and their interest in the matter is unknown. Francis B. Shelby was identified as the township supervisor and as guardian *ad litem* of Charles Allison, foster father of Delbert Allison. A foster father is defined as a man who has performed the duties of a parent to the child of another by rearing the child as his own child. Webster's New International Dictionary (2d ed). Service upon such foster father was proper but did not fulfill the requirement of service upon a blood relative or next of kin.

Nor does the record contain a certificate of the court stating the court's reasons for dispensing with personal service upon the persons as described in the statute. Failure to give the required notice to those persons who would normally be most concerned with the welfare of the minor was in violation of both the letter and purpose of the act unless such persons did not exist or their whereabouts was unknown. In order to protect the person to be committed, the statute requires a certificate by the court stating its reasons for not serving upon members of the family.

Either the court had no reason for the substituted service or sought to conceal it. As a result of its failure to follow the statute in giving notice of the hearing, the court did not acquire jurisdiction in the matter and was without power to issue a valid order in the subsequent proceedings.

"The probate court derives its jurisdiction from the statute. To obtain jurisdiction in this case, therefore, the provisions of the statute should have been strictly pursued." *In re Greenman,* 212 Mich 687. Also, see *In re Phillips,* 158 Mich 155, and *In re Harold H. Roberts,* 310 Mich 560.

An examination of the certificates of the 3 examining physicians shows a striking parallel with the statements found in the matter of *In re Fidrych,* 331 Mich 485, where Justice DETHMERS said:

"It should be said here that the requirements of the statute that the specified statements of the petition and certificates shall set forth facts, not mere conclusions, are mandatory not only when made by ordinary laymen but as well when made by physicians, despite the fact that the latter may well qualify as expert witnesses for the giving of opinion evidence for certain purposes. Such opinions do not satisfy the statutory requirements in this connection. It is the probate judge, not the physicians, who must make the determination of feeble-mindedness; it must be predicated upon a showing of facts, not merely upon the opinions of others, whether laymen or physicians."

Quoting from CL 1929, § 6887, p 2529:

"Certificates of such physicians to authorize commitment must show that it is their opinion that the person is actually insane, or feeble-minded, or epileptic, or mentally diseased, as the case may be, and shall contain the facts and circumstances upon which the opinion of the physicians is based, and show that

the condition of the person examined is such as to require care and treatment in an institution for the care, custody and treatment of such mentally-diseased persons."

In the instant case, the doctors made the following statements:

"This boy is a low-grade type, unable to add or subtract. Doesn't know anything about the officials of the State. He had no conception of distance, he is a very low grade about 5–6 years. I feel as though he should be confined to institution."

"Has a mentality of 6 years of age. Will never be of any greater mentality. Will never be able to support himself."

"He has made very little progress in school. Cannot answer some of the very simple questions. There is a tendency to associate with small children and girls and in my opinion, he is not safe without watching. He is a moron. I.Q. 6–8. I do not think his condition will improve, rather get worse."

These statements are primarily conclusions and opinions and substantially fail to state facts and circumstances upon which their opinions are based. They suffer from the same infirmities found in the *Fidrych Case, supra,* wherein we said:

"The averment of inability to read or write and of an I.Q. of 41 does not afford a sufficient factual basis for the conclusion of feeble-mindedness, as such facts may not necessarily be inconsistent with the existence of an untrained but, nevertheless, sound mind. The remainder of the statement consists of conclusions and opinions without the facts upon which they are based."

The record does not disclose that witnesses were sworn at the hearing on December 23, 1930, although an affidavit of the probate judge prepared 22 years

afterwards and filed with the return, states that the 3 physicians, as well as Delbert Allison and Francis B. Shelby, appeared in open court and were sworn. There is no summary of the testimony nor a showing that Francis Shelby had personal knowledge of facts and circumstances indicative of feeble-mindedness in Delbert Allison. The order of commitment makes reference to a "full investigation of said matter" but adds no details except mention of the doctors' certificates.

As was said by Chief Justice Reid in *Re Floyd Brooks,* 331 Mich 628:

"A recital in the record, 'After a full investigation of said matter,' does not show that witnesses testified competently to facts showing feeble-mindedness of Floyd Brooks, and necessity for his commitment.

" 'Records must be complete and not leave important statutory steps to bare inference.' *In re Payette,* 315 Mich 700, 703, 704."

Viewing the record as a whole, we are of the opinion, for the reasons herein stated, that there was a failure to strictly comply with the statutory requirements in committing Delbert Allison to a State institution. An order will enter discharging Delbert Allison from the Mount Pleasant State Home & Training School.

Dethmers, C. J., and Carr, Bushnell, and Sharpe, JJ., concurred with Adams, J.

Butzel, Boyles, and Reid, JJ., concurred in the result.