*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ALONDRA EDDINS.

---

DANIEL ING,

        Petitioner-Appellee,

v

ALONDRA EDDINS, formerly known as
HURTLEAN EDDINS,

        Respondent-Appellant.

FOR PUBLICATION
August 11, 2022

No. 360060
Washtenaw Probate Court
LC No. 14-000316-MI

---

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

RONAYNE KRAUSE, P.J. *(dissenting)*

I fully join in the majority's recitation of the facts, and I fully join in the majority's analysis and conclusion that the 2021 petition failed to comply with the requirements of MCL 330.1473. I respectfully disagree with the majority's conclusion that the defective petition did not deprive the probate court of subject-matter jurisdiction. However, I conclude that the probate court was permitted to grant amendment of the petition at the hearing. I would therefore remand for the probate court to ensure that a properly-conforming amended petition is filed.

## I. GENERAL LEGAL PRINCIPLES

"Subject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case," and it depends on "the character or class of the case" rather than the particular facts of the case. *People v Washington*, 508 Mich 107, 121; 972 NW2d 767 (2021). "The courts do not have inherent subject-matter jurisdiction; it is derived instead from our constitutional and statutory provisions." *Id*. "[T]here is a widespread and unfortunate practice among both state and federal courts of using the term 'jurisdiction' imprecisely, to refer both to the subject-matter and the personal jurisdiction of the court, and to the court's general authority to take action." *Id*. at 124. In other words, "[t]he loose practice has grown up, even in some opinions, of saying that a court had no 'jurisdiction' to take certain legal action when what is actually meant

is that the court had no legal 'right' to take the action, that it was in error." *Foster v Foster*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161892), slip op at p 11 (quotation omitted). Subject-matter jurisdiction depends on "the nature of the claim, rather than how the plaintiff phrases the request for relief." *Parkwood Ltd Dividend Housing Ass'n v State Housing Development Authority*, 468 Mich 763, 774 n 8; 664 NW2d 185 (2003). Subject-matter jurisdiction "does not depend upon the facts, but upon the allegations." *Fox v Martin*, 287 Mich 147, 151-152; 283 NW 9 (1938).

## II. SUBJECT-MATTER JURISDICTION

"The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law." Const 1963, Art 6, § 15. In relevant part, the probate court has jurisdiction conferred upon it by the Mental Health Code. MCL 600.841(1)(b). The Mental Health Code is MCL 330.1001 et seq. Pursuant to MCL 330.1403, "Individuals shall receive involuntary mental health treatment only pursuant to the provisions of this act." The Mental Health Code does not explicitly reference jurisdiction, but "court" is defined for purposes of involuntary mental health treatment as "the probate court or the court with responsibility with regard to mental health services for the county of residence of the subject of a petition." MCL 330.1400(c). It is therefore reasonably inferable that the Mental Health Code is jurisdictional. See *Teasel v Dep't of Mental Health*, 419 Mich 390, 403-404, 416-417; 355 NW2d 75 (1984).

As the majority discusses, respondent relies primarily on an older case that, in relevant part, held:

> The probate court derives its jurisdiction to appoint guardians for insane and incompetent persons entirely from the statute (How. Stat. §§ 6314, 6315)[1], and in order to obtain jurisdiction in such cases the provisions of the statute must be strictly pursued. The petition can only be filed in the county where the incompetent resides, and no hearing can be had, or appointment made, until such incompetent has had at least fourteen days' previous notice of the time and place when and where such hearing is to be had, and such notice must be personally served, and must be a written one, and this is absolutely essential to give the court jurisdiction . . . No such notice was given to Mrs. North.
>
> It is not enough that she may have learned of the pendency of such proceeding from [a banker]. The notice must be not only a written one, but must be given under the order of the judge of probate . . . Her appearance before the judge of probate in the manner and under the circumstances shown by the record,

---

[1] How. Stat. § 6314 provided: "When the relations or friends of any insane person, or of any person who, by reason of extreme old age or other cause, is mentally incompetent to have the charge and management of his property, or in case such insane or mentally incompetent person is a charge upon any county, when the directors of the poor of said county shall apply to the judge of probate to have a guardian appointed for him, the judge shall cause a notice to be given to the supposed insane or incompetent person, of the time and place of hearing the case, not less than fourteen days before the time so appointed." How. Stat. § 6315 addressed procedures following a hearing.

at the time the claimed hearing was had, neither waived her right to the notice required to be given by the statute, nor did it confer jurisdiction upon the court.

* * *

The want of notice, such as we have stated, clearly rendered the whole proceeding in the probate court void. Neither was there ever any decree made by the judge of probate adjudging Mrs. North to be mentally incompetent to take care of herself and manage her property. This was necessary, . . . and the adjudication should appear of record[.] It is unnecessary to review the proceedings before the probate court further. [*North v Washtenaw Circuit Judge*, 59 Mich 624, 646-648; 26 NW 810 (1886) (citations omitted).]

Notably, *North* cited *Palmer v Oakley*, 2 Doug 433 (1847), and the discussion in *Palmer* reveals that the Court was discussing subject-matter jurisdiction, not an error in the exercise of jurisdiction. See *Palmer*, 2 Doug at 460-495.

As the majority states, the statute at issue in *North* no longer exists. Certainly, case law interpreting obsolete statutes may be of diminished value in interpreting current statutes. See *In re Special Needs Trust for Talonda Moss*, ___ Mich App ___, ___ n 3; ___ NW2d ___ (2022) (Docket No. 357836), slip op at p 4 n 3. However, having already unanimously determined that the 2021 petition is fatally defective under MCL 330.1473, our task is to determine the legal effect of that fatal defect rather than to further interpret statutory provisions. The critical question is more abstractly whether a defective petition under a jurisdictional statutory scheme deprives the probate court of subject-matter jurisdiction. In other words, the point is not whether petitioner complied with a long-repealed statute from the nineteenth century, but whether petitioner's noncompliance with a current statute is, under the circumstances, jurisdictional.

I conclude that the principles expressed in *North* remain applicable. In 1945, our Supreme Court unambiguously reiterated the principle that the probate court's jurisdiction over commitment of an insane person depended upon strict compliance with all applicable statutory requirements. *Ex parte Roberts*, 310 Mich 560, 562; 17 NW2d 752 (1945). A few years later, our Supreme Court expressly held that the probate court lacked jurisdiction over the involuntary commitment of the respondent because the respondent had not been present at the commitment hearing and the probate court had not been provided with statutorily-mandated facts showing that the respondent's presence would be unsafe or improper. *Ex parte Fuller*, 334 Mich 566, 572-575; 55 NW2d 96 (1952). Although the preceding two cases involved notice or a right to be present at a hearing, our Supreme Court has also explained that a commitment petition containing mere conclusions and opinions without reciting a factual basis for those conclusions and opinions is fatally defective and can "not serve to confer jurisdiction on the probate court [so] its subsequent order was, therefore, a nullity." *Ex parte Fidrych*, 331 Mich 485, 486; 50 NW2d 303 (1951). Furthermore, a statutory restriction against probate courts granting rehearings after three months was considered jurisdictional as recently as 1977. *Est of Kasuba*, 401 Mich 560, 564-567; 258 NW2d 731 (1977). In short, strict compliance with a jurisdictional statute is necessary for the probate court to have jurisdiction. Therefore, the fatally defective 2021 petition could not give the probate court jurisdiction in this matter.

-3-

### III. AMENDMENT OF PLEADINGS

Courts generally cannot undertake any action other than dismissal in a case where the court lacks subject-matter jurisdiction. *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242-243; 134 NW2d 146 (1965). If summary disposition is granted pursuant to MCR 2.116(C)(8) for failure to state a claim, the trial court must permit amendment of the pleadings unless doing so "would not be justified." MCR 2.116(I)(5). The Court Rules do not include a similar requirement where summary disposition is granted pursuant to MCR 2.116(C)(4) for lack of jurisdiction.

Nevertheless, a court that lacks subject-matter jurisdiction on the face of the pleadings, but where it has subject-matter jurisdiction pursuant to the substance of the claims, may retain the power to allow the parties to amend the pleadings to conform to the claims. *Krolczyk v Hyundai Motor America*, 507 Mich 966, 968; 959 NW2d 720 (2021). Significantly, MCR 5.118(A)(2), part of the general rules of pleading and practice applicable to the probate court, explicitly permits "A person who has filed a document that is subject to a hearing" to amend or supplement the document "at the hearing without new notice of hearing if the court determines that material prejudice would not result to the substantial rights of the person to whom the notice should have been directed." Furthermore, although MCR 2.119(A)(1)(a) generally requires motions to be in writing, that is only "unless made during a hearing or trial."

Petitioner orally asked the trial court during the hearing to amend the petition. Although the 2021 petition was fatally defective, it nevertheless existed and therefore could be amended. The trial court expressly ruled that respondent would not be prejudiced by the amendment because there was, essentially, no possible way respondent was unaware of "why this case as brought and why we were here." The trial court further clarified that "I don't believe it would be genuine to say that there – that the Respondent had no idea why this petition was being brought." The trial court also opined that it would be "just ingenuous [*sic*] to assume that we have to allow a person to totally go off their meds and demonstrate the risk to the individual that is at risk by taking an act every time a new petition is filed to demonstrate the need for continuing the petition. The record strongly suggests that all of those rulings were reasonable, and taken together, they collectively constitute a ruling that amendment would "not affect the substantial rights of" respondent, MCL 600.2301; that "justice so requires" the amendment, MCR 2.118(A)(2); and that "material prejudice would not result to the substantial rights of" respondent, MCR 5.118(A)(2).

I would conclude that although the 2021 petition was fatally defective and therefore deprived the probate court of subject-matter jurisdiction, the trial court properly granted petitioner's oral motion at the hearing to amend the petition. However, the record shows that no amended petition was ever actually filed. This oversight means the probate court never properly acquired subject-matter jurisdiction. Nevertheless, instead of reversing the probate court, I would provisionally remand to the probate court for petitioner to file an amended petition and retain jurisdiction.

/s/ Amy Ronayne Krause